*556
 
 Jones, J.
 

 The sole question presented is whether the trial court erred in directing the verdict. It did so for the reason that, in its opinion, plaintiff’s evidence disclosed that he was guilty of violating the city ordinances and that such violation proximately caused his injury.
 

 In the consideration of this case we shall chiefly allude to the evidence of the plaintiff. Plaintiff was the owner of a single-seated Dodge coupe, a six-year old model, which he had purchased some three months before the accident. After midnight on May 12, 1929, in taking his guests home, he loaded the five of them in this single-seated car. So loaded, the occupants, including himself, numbered three adults and three small children, approximately three, five and seven years of age. The father, seated next to the plaintiff’s right, held one child in his lap; the mother, seated next on the father’s right, held another child. Between the knees of the mother and father stood the third child, his feet on the floor, with his father’s arm supporting him. The plaintiff was well acquainted with the crossing, which at the point where the collision occurred, had four tracks, two east-bound and two west-bound. The train that collided with plaintiff’s automobile was approaching the east from the plaintiff’s right, and was on the third track, which plaintiff had to cross. The plaintiff testified that when he approached the crossing with the car so loaded he stopped his car and remained in high gear without going into neutral. His evidence clearly discloses that this was done because of the difficulty in handling the gears because of the loaded condition of his car. He remained so until a shifting engine had passed him going east on the first track and had cleared the crossing and stopped. This was upon the track nearest to the plaintiff. He then started his car, crossed track number one, upon which the shifting engine had
 
 *557
 
 passed, crossed number two, and when be approached the third track a train approaching from the west struck his automobile. The plaintiff testified that the view to his right was unobstructed for a great distance; but further testified that he did not hear a whistle or bell and could not, in the darkness, see the approaching train because of the absence of a headlight. One singular feature presented by the evidence of plaintiff was the testimony of two cruising officers of the city who were some 1500 feet away. They were disinterested witnesses called by the plaintiff, and both testified that they heard the crash, looked up immediately and saw the headlight of the train burning as its crew applied the brakes. Another singular feature of the plaintiff’s testimony is the entire absence of knowledge of his car’s mechanism, although he had driven it about three months.
 

 ‘ ‘
 
 Q. And where did you have your emergency brake on that car? A. I have forgotten. I couldn’t say.
 

 “Q. It was to your right, and towards the center, wasn’t it? A. I wouldn’t say.
 

 “Q. How is that? A. I don’t remember.”
 

 Considering the plaintiff’s evidence, it seems quite clear that, in so heavily loading his car as to interfere with his view of the approaching train, and because of his confessed inability to handle his gear shift as he usually did, the violations of the two city ordinances proximately contributed to the plaintiff’s injuries. We quote from the plaintiff’s testimony:
 

 “Q. All right. Now let’s go back to the time you stopped. Did you shift gears? A. No, sir.
 

 “Q. Why not? A. Well, I just had my car overhauled for one thing and I was crowded.
 

 “Q. You were what? A. Crowded.
 

 “Q. Crowded? A. I had a load in my car. * * * “Q. That is, the truth of it is, it was the people next
 
 *558
 
 to you who interfered and caused you not to make the conventional shift? A. Yes.
 

 “Q. If you had been traveling by yourself that night, you would have gone into second and gone on across, wouldn’t you? A. Yes.
 

 “Q. As it was, what did you do? How did you get your car started after you had come to a stop in high ? A. Why, I just dropped my clutch in and out gradually until I got my ear rolling.”
 

 Plaintiff further testified that in starting his car over the tracks in high gear more noise was made than usual, and that he ran his motor fairly fast.
 

 Ignoring the fact that an eye witness produced by the defendant testified that he saw the headlights of the train burning just before the accident happened, but giving heed to the testimony of the plaintiff and of the two cruising officers produced by him, reasonable minds could arrive at no other conclusion than that plaintiff’s violation of the city ordinances was a proximate cause of his injury. The trial court was justified in directing a verdict for the defendant.
 
 Jacob Laub Baking Co.
 
 v.
 
 Middleton,
 
 118 Ohio St., 106, 160 N. E., 629;
 
 Michalec, Admr.,
 
 v.
 
 Hutchison,
 
 123 Ohio St., 494, 176 N. E., 79;
 
 New York Central Rd. Co.
 
 v.
 
 Stevens, Admr.,
 
 126 Ohio St., 395, 185 N. E., 542;
 
 Hamden Lodge
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246.
 

 The judgment of the Court of Appeals is reversed and that of the trial court affirmed.
 

 Judgment reversed.
 

 .
 
 Weygandt, C. J., Stephenson, Matthias, Day and Zimmerman, JJ., concur.