WILLARD, APPELLEE, *v.* FAST, APPELLANT.

(No. 342—Decided November 27, 1944.)

*Mr. C. W. Chorpening,* for appellee.
*Mr. G. P. Gongwer,* for appellant.

SHERICK, J. This appeal on questions of law is from a judgment entered on a jury's verdict in favor of plaintiff in an action for damages to person and property, growing out of an automobile collision at the intersection of two county highways over neither of which travelers had preferential rights as to travelers over the other.

Plaintiff's cause of action is based on a single negligent act in that it is claimed the accident was caused by reason of the fact that defendant was operating his

automobile at a "high and dangerous rate of speed, 50 to 60 miles per hour" in approaching the intersection. The defendant's answer is a general denial.

Inasmuch as three of the claimed errors relate to the trial court's refusal to direct a verdict in defendant's favor at the conclusion of plaintiff's case, and at the end of all the evidence, and to the court's refusal to award judgment notwithstanding the verdict, a careful reading of the record became imperative, which developed the following operative facts, none of which are in dispute.

The intersecting county highways are straight, at right angles to each other, of gravel construction and forty feet in width at and approaching the intersection. Each had thereon a worn single track. Plaintiff stated that he was proceeding south at a speed of from 25 to 30 miles per hour; that from any point from 800 feet north of the intersection to the intersection, he could look to his right and see the east-and-west road from the intersection to the brow of an elevation 250 feet distant; that when he was from 100 to 125 feet from the intersection, he looked to his right and did not see the defendant's car within the 250-foot space; that he then looked to his left and observed no one approaching; and that he proceeded on into the intersection and then saw the defendant for the first time. The collision followed immediately. The car of the defendant struck the middle section of plaintiff's coupe. Plaintiff stated that he did not again look west until he had entered the intersection.

Defendant said that he was driving east; that he did not see the plaintiff until he appeared before him at the intersection; and that he was going at from 30 to 35 miles per hour. There was one disagreement in the testimony, irrespective of the positions of the vehicles after the accident, and that related to the dis-

tance between the intersection and the brow of the hill west on the east-and-west road. Defendant placed it at 90 paces or 270 feet.

Both litigants were familiar with the intersection and both roads. There were no stop signs. It was a fall morning and the time eight o'clock. A heavy mist or light rain was falling. Both parties had their window wipers in operation. No one other than the litigants saw the collision. It is evidenced that the front of defendant's car was badly damaged and that plaintiff's car was badly stoved in and was eventually sold as scrap metal. After the accident, defendant's car was headed east and rested 9 to 10 feet east of the intersection, off the berm. Plaintiff's car was south and east of defendant's car in an open field. Both cars were in an upright position. A deputy sheriff was permitted to testify under objection that in his opinion plaintiff's car was hit with considerable force. There is no direct evidence or any other evidence of defendant's claimed negligent speed.

Defendant contends that there is no proof of negligence on his part, and that plaintiff's evidence clearly established that plaintiff was negligent in failing to look when such looking would have been effective, and in his failure to accord defendant the right of way in accordance with Section 6307-40, General Code. Defendant further urges that the mere happening of an accident can never presuppose negligence. He asks not only that the judgment be reversed, but that this court enter final judgment in his favor.

Upon the other hand, plaintiff insists that the judgment be affirmed. He maintains that when he looked to his right from a point 100 to 125 feet north of the intersection and did not see the defendant within the 250-foot section of the east-and-west road west of the intersection, he could safely assume that he could enter

and cross the intersection before any one approaching from his right could reach and enter it; that he had a right to rely upon defendant's approaching the intersection in a "lawful manner"; that the fact that he did so look and saw only an empty stretch of road is a proven fact from which the reasonable inference is deductible, as a mathematical computation, that defendant must have been traveling at a speed of from 50 to 60 miles per hour; and that this "inference" establishes that defendant was approaching the intersection in an unlawful manner which deprived him of his preferential rights and afforded plaintiff the right to proceed on uninterruptedly across the intersection.

Plaintiff also claims that the force testified to by the deputy sheriff, the damage to the respective cars and their position after colliding, lend support to the plaintiff's claim of defendant's unlawful speed. This court cannot see that the last noted claim adds anything to the inference of speed. If the cars at the point of impact were moving at speeds of 25 to 35 miles per hour, then it is to be expected that considerable damage would follow as a natural consequence. There was nothing in the evidence by way of testimony or exhibits which showed excessive speed on the part of the defendant.

It is well understood in this state that the mere happening of an accident does not presuppose actionable negligence on the part of either party. That is a fact which the party asserting must prove by direct evidence or logical inference predicated upon proven facts. Now what is the proven fact in this case? Plaintiff said that he looked to his right when he was 100 to 125 feet from the intersection and did not see the defendant approaching. Upon this fact alone the inference of unlawful speed is predicated. Is it a logical inference? Is it such proof as is sufficient to over-

come the effect of the established rule that actionable negligence is never to be presumed from the mere happening of an accident?

If it be so sufficient, it is inescapable that negligence is proven from an inference which is nothing more than a presumption. The two terms are relatively closely akin when employed in the sense here encountered and are in fact synonymous. When they are interchanged, little violence is encountered either in a grammatical or legal sense.

If it is countenanced that negligence of excessive speed can be proved by a litigant's testimony to the effect that he looked when he was 100 to 125 feet from an intersection, and did not see anyone approaching from his right and estimated by mathematical computation that he would arrive at an intersection before anyone on his right, travelling in a "lawful manner," could, a dangerous precedent is approved. Few men and fewer women are good judges of relative speeds and distances. Sight is far from being infallible as human experience teaches. Let us assume, as is here claimed, that the driver on the right, who would have the statutory preferential right if he were approaching in a lawful manner, is actually approaching in an unlawful manner. How is the unfavored motorist to learn that fact if he looks but once when he is 100 to 125 feet distant, but is thereafter concerned only with travel to his left, and proceeds serenely forward with undiminished speed into the intersection and the path of the oncoming car? The answer is of course by sad experience rather than by the light of experience of the past.

The Legislature in enacting Sections 6307-2 and 6307-40, General Code, was attempting to make highway travel safe at intersections. It intended to and did depart from the rule of common law as to the exercise

of due care for one's own safety (but not entirely so as will be hereinafter pointed out) and to substitute therefor statutory rules of conduct which gave to the traveller on the right the absolute preferential right to proceed onward uninterruptedly in a lawful manner. He loses this right, however, if he approaches in an unlawful manner.

Section 6307-40, General Code, reads as follows:

"Excepting where otherwise provided the operator of a vehicle * * * shall yield the right-of-way at an intersection to a vehicle * * * approaching from the right."

The court in *Morris* v. *Bloomgren,* 127 Ohio St., 147, 154, 155, 187 N. E., 2, 89 A. L. R, 831, considered Section 6310-28*a*, General Code, now Section 6307-40, and the contention of the unfavored driver, and had this to say:

"* * * that, if the driver, who is required to yield the right of way, reaches the intersection first, he has a superior right to proceed, or at least a right to proceed equal to that of the vehicle approaching from his right. There is no such limitation or qualification found in the statute."

It was pointed out that if this was the construed rule collisions would frequently result.

We point out that Sections 6307-2 and 6307-40, General Code, give the favored driver the right of way if he is approaching in a lawful manner, but that he shall lose his preference if he is driving unlawfully. It must be noted with equal force that the latter section does not say that the disadvantaged driver may proceed uninterruptedly if the one on his right is approaching unlawfully. To placidly ignore him is to court disaster.

It is perceived that *Morris* v. *Bloomgren, supra,* is a case wherein the favored driver was plaintiff, which is the converse of the present controversy. The prin-

cipal question in that case was more concerned with the rights and duties of the favored motorist. Here we are perplexed with the rights and duties of the less favored driver. We have previously pointed out that ordinary care of the common law may still be a rule of conduct in some degree in cases like these. In the fifth paragraph of the syllabus of the *Morris case* the court declares as the law, that if a favored driver discovers that the other is not yielding the right of way, he must exercise ordinary care not to injure the other.

Clearly, the statutes being silent, when an unfavored driver discovers that the motorist on his right is not approaching an intersection in a lawful manner, and they both arrive at the intersection at or about the same time, it becomes the duty of the unfavored driver to not only refrain from injuring the other but to also use ordinary care for his own safety.

Did plaintiff exercise ordinary care in this instance for his own safety? We not only think that he did not do so but that his own testimony clearly exhibits contributory negligence which should preclude his recovery, even if we are to grant plaintiff's claim that his inference of negligence sufficiently proved defendant's negligence of excessive speed.

We are of the opinion that plaintiff, after looking to his right when he was 100 to 125 feet from the intersection, failed thereafter to exercise ordinary care for his own safety. He might thereafter have approached and entered the intersection but should not have entered the path of an approaching east-bound car without again looking to his right. Plaintiff contends that the law does not prescribe the distance within which one must look in order that such looking may be termed effective. However, if this be true, we now hold in a situation of this kind that such looking ought

to be within such a distance that an unfavored driver may safely bring his vehicle to a stop before entering the path of an oncoming car approaching from his right. We believe that such a rule is consonant with the purpose of the statutory intersection rules and the servient driver's own safety.

Again reverting to *Morris* v. *Bloomgren, supra,* 154, it is stated therein that:

"Ordinarily the operator of a vehicle is able to ascertain before he reaches the intersection whether another vehicle is approaching from his right; but, in any event, after entering the intersection he has a further leeway of some distance between the point of entering the intersection and its center for ascertaining such approach before he drives into the path of the vehicle possessing the right of way."

That conclusion ought to be equally true, even if the unfavored driver then learns for the first time that the one on his right is approaching in an unlawful manner. To our notion any other rule would promote insecurity at intersections.

It follows, irrespective of defendant's negligence or lack of proof thereof, that plaintiff, by his own testimony, failed to exercise due care, that is ordinary care, for his own safety, and that such negligence forbids him relief.

The judgment is reversed, the petition is dismissed and final judgment is entered for defendant. Finding as we do it becomes unnecessary to pass upon the further errors assigned.

*Judgment reversed.*

MONTGOMERY, P. J., and PUTNAM, J., concur.