For the reasons stated, the judgment of Municipal Court is affirmed.

*Judgment affirmed.*

HURD, P. J., KOVACHY and SKEEL, JJ., concur.

MEEK, APPELLEE, *v.* SCHWANBECK, APPELLANT.

(No. 4703—Decided May 11, 1953.)

*Messrs. Marshall, Melhorn, Block & Belt* and *Mr. Arnold Bunge,* for appellee.

*Messrs. Fuller, Harrington & Seney* and *Mr. Gerald Riley,* for appellant.

FESS, J. This is an appeal on questions of law from a finding and judgment of the court, without the intervention of a jury, in favor of the plaintiff in the sum of $851.33.

On August 4, 1949, at about 3 p. m., plaintiff was driving

his 1941 Buick four-door sedan easterly on Gordon Street toward the intersection of Hiett Avenue at a speed of approximately 20 miles per hour. At the same time, defendant was driving her 1934 Ford coupe in a northerly direction on Hiett Avenue, approaching the intersection. Plaintiff testified that a two-story residence occupies the lot on the southwest corner of the intersection, which residence "sits rather high on a terrace and there is a hedge in front of it, but if you get up, well, within 10 feet of the curb you can see down the street," and that "the terrace is back far enough you can see down the street before you get into the intersection." Defendant testified that she would have to get right up to the intersection before she could see what was approaching from her left. As plaintiff was about to enter the intersection at a point 10 feet therefrom, he looked to his right and saw the defendant's car approaching about 100 feet down Hiett Avenue. Thereafter, he proceeded into and across the intersection without again looking to his right.

The prima facie speed limit in the area of the collision was 25 miles per hour. On direct examination, no inquiry was made of plaintiff regarding the speed of defendant's car, but upon cross-examination, he said she must have been traveling 35 to 40 miles per hour. It is apparent from his testimony that his estimate of defendant's speed was based upon the suddenness and result of the collision rather than upon his observation at the time he looked. The trial court found that "misjudging her true speed and assuming that defendant was traveling at a reasonable and proper rate of speed and that he had plenty of time to cross Hiett Avenue before defendant would reach the intersection, plaintiff proceeded into the intersection."

As defendant was about to enter the intersection, she observed plaintiff's car just about in the middle of the intersection about two car lengths ahead of her. Instead of turning her car to her left, she applied her brakes and turned to the right in an effort to avoid the collision. The left front end of her car struck defendant's car at a point immediately in front of its right rear wheel. The evidence is in dispute as to whether plaintiff's car was within the intersection or was just leaving it. The trial court found that plaintiff's car was leaving the intersection.

Although plaintiff's automobile was 1,200 pounds heavier than defendant's, plaintiff's automobile, as a result of the impact, swung around in an arc of approximately 90 degrees and the left rear end collided with a utility pole 15 feet from the east curb of Hiett Avenue on the north side of Gordon Street. After the collision, defendant's automobile stopped almost at the point of impact. In the conclusions of fact, the court found that plaintiff was free from negligence and that the sole proximate cause of the collision and resultant damage to plaintiff's automobile was the negligence of the defendant in driving her automobile at a speed greater than was reasonable and proper, having due regard to the traffic, surface and width of the streets and the other conditions then existing, in failing to keep her automobile under control, in failing to keep a proper lookout for other vehicles lawfully using said thoroughfares, particularly the automobile driven by the plaintiff, in failing to give any signal or warning of her intention to enter said intersection, and in failing to stop her automobile, slacken the speed thereof, or divert the course thereof so as to avoid striking plaintiff's automobile.

Again we are confronted with the perplexing problem of the relative rights and obligations of drivers simultaneously approaching an intersection. The statutory rules with respect to right of way are designed to avoid those dangers inherent in simultaneous approaches by requiring a yielding of the right of way, and to prevent careless drivers from crashing highway intersections. Since *Morris* v. *Bloomgren*, 127 Ohio St., 147, 187 N. E., 2, 89 A. L. R., 831, the principle has been definitely established that the driver approaching from the left must yield the right of way to a driver approaching from the right, provided the otherwise favored driver is proceeding in a lawful manner. It was to be hoped that *Morris* v. *Bloomgren, supra,* had settled the confusion which had arisen following *Heidle* v. *Baldwin,* 118 Ohio St., 375, 161 N. E., 44, 58 A. L. R., 1186, in 1928, and *George Ast Candy Co.* v. *Kling,* 121 Ohio St., 362, 169 N. E., 292, in 1929. But in the intervening twenty years further difficulty has been experienced in the application of definitive common-law rules of conduct concerning the relative rights and duties between a driver approaching from the left

and a driver approaching from the right in an unlawful manner.

It is a common trait of human nature that one who makes a mistake is inclined to excuse his own conduct and blame the result on another. And it is quite natural for a plaintiff not having the right of way who suffers damage in an intersection collision to say that the defendant was approaching at an excessive rate of speed or was driving on his left hand side of the highway. In the face of such testimony, the relative obligations of the drivers are governed by the rules of common law, and frequently the question of the negligence of the defendant, the contributory negligence of the plaintiff, and the proximate cause of the injury are for the jury. But notwithstanding the evidence tends to show that the defendant approached the intersection in an unlawful manner, the plaintiff is not absolved from his duty to exercise ordinary care under the circumstances. It is hardly necessary to say that the fact that a defendant has lost his right of way does not give the plaintiff such right of way. Suppose, for example, a plaintiff observes the defendant approaching at a lawful rate of speed but upon the left hand side of the highway. If the plaintiff enters the intersection mistakenly thinking he has time to cross and is struck, such plaintiff would be guilty of negligence proximately contributing to his damage as a matter of law. The difficulty arises in determining under the common-law rules of negligence the relative obligations of the drivers of the converging vehicles. Neither driver has the right of way. Each driver is bound to exercise ordinary care. Each driver, with knowledge of the imminent approach of the other, enters the intersection at his peril. Merely because a plaintiff may assume that a driver on his right will proceed in a lawful manner does not absolve the plaintiff from his duty to enter the intersection with care.

We are not inclined to hold that the unfavored driver should make absolutely sure that he can enter the intersection safely—nevertheless, an unfavored driver about to enter an intersection, who observes another vehicle approaching from his right and who guesses from a casual glance at the approaching vehicle that he can cross in safety, does not exercise that degree of care which an ordinarily prudent unfavored driver should exercise under the circumstances. *Rubin* v. *Wasser*, 61

Ohio Law Abs., 76, 103 N. E. (2d), 293; *Kellar* v. *Miller*, 67 Ohio App., 361, 36 N. E. (2d), 890; *Willard* v. *Fast,* 75 Ohio App., 225, 61 N. E. (2d), 807; *Williams* v. *Judd,* 23 Ohio Law Abs., 450, 34 N. E. (2d), 799. It is the duty of the unfavored driver to make such observation as to ascertain with reasonable certainty that he can cross safely. The unfavored driver is not to be considered to have fulfilled his duty to exercise due care for his own safety where, in passing into and attempting to cross an intersection in front of an approaching vehicle, he merely looks, and, having seen the approaching vehicle, thinks he has ample time to cross its pathway in safety. Not only should he look and see what he can see, but he should look and see carefully. He has the duty of making a reasonably careful observation of approaching traffic. He should not only look and see what is observable, but he should exercise due diligence in estimating the distance an approaching vehicle is away and the speed at which it is nearing.

In the instant case, as plaintiff was about to enter the intersection, he observed the defendant's automobile one hundred feet to his right; he says he misjudged her speed and without stopping or making any further observation for his own safety proceeded to cross the intersection and was struck.

It is apparent that plaintiff moved into the intersection without having any real idea of the exact position or speed of defendant's vehicle. Although he looked, he looked negligently. Having moved forward, he did not again look to his right, if at all, until an instant before the collision. As plaintiff moved forward, he could have again looked to his right, and could have seen that he had originally miscalculated defendant's speed. Having moved forward, a mere glance to his right would have disclosed his danger, which glance would have afforded him the opportunity to stop before reaching the center of the intersection and possibly avert the collision.*

Such conduct amounts to indifference to danger. Without

---

*"Ordinarily the operator of a vehicle is able to ascertain before he reaches the intersection whether another vehicle is approaching from his right: but, in any event, after entering the intersection he has a further leeway of some distance between the point of entering the intersection and its center for ascertaining such approach before he drives into the path of the vehicle possessing the right of way." Morris v. Bloomgren, supra, 154.

due regard to the position and speed of defendant's vehicle, plaintiff took a chance on beating defendant's vehicle across the intersection. Under such circumstances, reasonable minds would agree that the conduct of the plaintiff fell below the standard to which he should have conformed to protect himself from damage. A definite inference of contributory negligence on the part of the plaintiff thereby arose which, in our opinion, the evidence failed to dispel.

The finding of the trial court, that the plaintiff was free from negligence, and the judgment are manifestly against the weight of the evidence.

The judgment of the trial court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

Conn and Deeds, JJ., concur.