SPITLER, APPELLEE, *v.* MORROW ET AL., APPELLANTS.

(No. 4852—Decided May 23, 1955.)

*Mr. John Rust,* for appellee.
*Mr. Wayne E. Shawaker,* for appellants.

FESS, J. This is an appeal on questions of law from a judgment entered upon a verdict of a jury for plaintiff by the Municipal Court of Toledo, Ohio.

On January 21, 1953, about 9 p. m., plaintiff was driving his automobile in a northerly direction on Garrison Road at a speed of approximately 20 miles per hour. The defendant was operating his automobile in a westerly direction on Portsmouth Avenue. Each street is 20 feet wide and paved with asphalt. It was dark, but the weather was clear and the pavements were dry. There was substantially no obstruction to the view of either driver approaching the intersection within 30 feet of the southeast corner thereof. As plaintiff approached the intersection, he looked both to his right and left and observed no traffic on Portsmouth Avenue. A residence is located on the southeast corner of the intersection about 30 feet south of Portsmouth Avenue and 34 feet east of Garrison Road. As plaintiff arrived at a point "about even" with such residence, he first observed the lights of defendant's automobile about 90 yards to his right, traveling at a speed which appeared to plaintiff to be reasonable and proper. Plaintiff, therefore, decided that he could safely proceed across the intersection. As he proceeded into the intersection, he again looked to his left and then to his right and noticed that defendant's car was bearing down upon him. In his brief, plaintiff concedes that he misjudged the speed of defendant's car and that, when he noticed defendant's car bearing down on him, neither he nor defendant could have avoided the collision. Plaintiff testified as follows:

"I was about even with the brown shingle home, I looked to the right and observed a car about as far down as Grantley Avenue. I looked to the left and proceeded on through the intersection. As I glanced again to the right I noticed this car bearing down on me very fast as I was almost through the intersection he caught me on my right rear fender, about, I'd say, about a foot from the end of the car at the time of the impact. When I realized he was apt to hit me I swerved to the left to try to avoid the accident and stepped on the gas a little bit. As we ended up, as I ended up in the car, I found myself upside down and the car as I observed it, after I got out of the car, that it was facing south on Garrison Avenue. I'd say—the car end up—about a car and a half distance from the intersection at Portsmouth [Avenue] to the north part of Garrison north of

Portsmouth [Avenue]. As I first saw the car I figured from that distance that he was going along at the reasonable length of speed for that district, that neighborhood, I proceeded on through the intersection."

Defendant and his passenger testified that they first observed plaintiff's car from a point 30 feet east of the intersection. Defendant admits that he was driving in a 25-mile-per-hour zone at about 30 to 35 miles per hour. On observing plaintiff's car, defendant immediately applied his brakes and was traveling not more than 10 miles per hour at the point of impact with the right rear fender and bumper of plaintiff's car. Plaintiff had almost cleared the intersection at the time of the collision, which occurred in the northeast quadrant thereof. Skidmarks from defendant's car were 30 to 35 feet in length, but the evidence is in dispute as to their location on the pavement. Defendant and his passenger testified that the car was practically stopped at the point of impact and moved but a foot thereafter. Plaintiff testified that he saw defendant's car two minutes after the accident, parked next to the north curb west of the intersection. Defendant and his passenger said the car was moved across the intersection immediately after the accident.

Upon the record, it is apparent that the defendant prima facie lost his preferential right of way by driving in the night season in excess of 25 miles per hour, and the relative obligations of the drivers of the converging vehicles are to be governed by the rules of the common law. *Morris* v. *Bloomgren,* 127 Ohio St., 147, 187 N. E., 2, 89 A. L. R., 831. Under such circumstances, the defendant was bound to exercise ordinary care to avoid injury to the plaintiff, and the plaintiff was bound to exercise ordinary care for his own safety. Even though the operator of a vehicle approaching from the right loses his preferential right of way, the other driver may be precluded from recovery by his own contributory negligence.

In *Meek* v. *Schwanbeck,* 99 Ohio App., 83, this court held that: "An unfavored driver about to enter an intersection, who observes another vehicle approaching from his right and who guesses from a casual glance at the approaching vehicle that he can cross in safety, does not exercise that degree of care which

an ordinarily prudent unfavored driver should exercise under the circumstances in proceeding into and across the intersection."

This court recently held in *Laws* v. *Vance* (Court of Appeals, Sixth Appellate District, *post*, 255), that even the preferred driver lawfully approaching an intersection, in the exercise of ordinary care must look for a vehicle approaching from his left at such time and place as to make his looking effective to avoid injury to himself. Decisions in other districts hold that although the driver from the right has lost his preference by proceeding at an excessive speed, neverthless, the failure of the unpreferred driver to accurately determine that he may enter the intersection safely constitutes contributory negligence as a matter of law. *Coshun* v. *Mauseau* (Court of Appeals, First Appellate District, 1939), 62 Ohio App., 249, 23 N. E. (2d), 656; *Kellar* v. *Miller* (Court of Appeals, Second Appellate District, 1941), 67 Ohio App., 361, 36 N. E. (2d), 890; *Willard* v. *Fast* (Court of Appeals, Fifth Appellate District, 1944), 75 Ohio App., 225, 61 N. E. (2d), 807; *Schaefer* v. *Cincinnati Street Ry. Co.* (Court of Appeals, First Appellate District, 1945), 75 Ohio App., 288, 62 N. E. (2d), 102. We are not inclined to hold that a driver approaching an intersection from his left is bound to stop and await the passage of a vehicle which he may observe, for example, a quarter of a mile down the highway to his right; but the unpreferred driver is bound to look, and if he observes a converging vehicle within a reasonable distance from the intersection, he may not guess or even estimate its speed without entering the intersection at his own peril. Ordinarily, no inference of negligence arises from proof of an accident alone; but a collision at an intersection indicates that the converging vehicles were in reasonable proximity to each other and that either or both of the drivers did not exercise that degree of care which an ordinarily prudent driver would or should have exercised.

In *Meek* v. *Schwanbeck, supra*, final judgment was not entered, the conclusion was reached that the verdict was manifestly against the weight of the evidence, and the cause was remanded for a new trial. Upon a review of the facts in that case as revealed in the opinion, a majority of this court are now

of the opinion that the plaintiff was guilty of negligence proximately contributing to his injury and damage as a matter of law and that final judgment should have been entered for the defendant.

Our conclusion in the *Meek case* was evidently based on the principle that, notwithstanding the plaintiff was guilty of contributory negligence as a matter of law, the question of proximate cause was for the jury. Cf. *Smith* v. *Zone Cabs,* 135 Ohio St., 415, 21 N. E. (2d), 336; *Glasco* v. *Mendelman,* 143 Ohio St., 649, 56 N. E. (2d), 210; *Betras, Admr.,* v. *G. M. McKelvey Co.,* 148 Ohio St., 523, 76 N. E. (2d), 280. Courts in other districts have entered final judgment. *Williams* v. *Judd* (Court of Appeals, First Appellate District, 1936), 23 Ohio Law Abs., 450, 34 N. E. (2d), 799. In *Coshun* v. *Mauseau, supra,* the Court of Appeals (First Appellate District) found a judgment for defendant (the unpreferred driver) manifestly against the weight of the evidence and held that the unpreferred driver must proceed into the intersection at a speed sufficiently slow to permit him to stop the vehicle which he is operating promptly, and thus not cross the path of the vehicle having the right of way.

In *Schaefer* v. *Cincinnati St. Ry. Co., supra,* the Court of Appeals (First Appellate District) affirmed a directed verdict for the defendant against the plaintiff (the unpreferred driver) and overruled its previous decision in *Nunn* v. *Davidson* (1937), 55 Ohio App., 297, 9 N. E. (2d), 732, to the extent that the servient driver is under no duty to look before entering the path of the dominant vehicle. In *Kellar* v. *Miller, supra,* final judgment was entered against the unpreferred driver, notwithstanding evidence that the preferred driver was proceeding in an unlawful manner. In *Willard* v. *Fast, supra,* the court reached a like conclusion and entered final judgment.

In *Coshun* v. *Mauseau, supra,* the court, at page 251, observed:

"It is the duty of one who is required to regulate his progress in a certain direction to, so far as is reasonably possible, ascertain the presence of what he is required to observe from a position where this can be done effectively. There is no difference in principle in railroad crossing cases and street intersec-

tion cases as far as this rule is concerned. *Detroit, T. & I. Rd. Co.* v. *Rohrs*, 114 Ohio St., 493, 151 N. E., 714; *Pennsylvania Rd. Co.* v. *Rusynik*, 117 Ohio St., 530, 159 N. E., 826, 56 A. L. R., 538; *Youngstown & S. Ry. Co.* v. *Prigosin*, 53 Ohio App., 189, 4 N. E. (2d), 599; *Williams* v. *Judd*, 23 Ohio Law Abs., 450.''

In our opinion, a distinction may be drawn between the relative duties of converging drivers at an intersection and railroad crossing cases, since the speed of a moving train can not as readily be controlled as that of a motor vehicle. Nevertheless, the principle in the railroad cases that a party must look at such time and place as is effective relates to the exercise of ordinary care and should likewise apply to the drivers of converging vehicles approaching an intersection.

With the exception of *Smith* v. *Zone Cabs, supra, Glasco* v. *Mendelman, supra,* and *Betras* v. *McKelvey Co., supra,* the Supreme Court has consistently approved directed verdicts and judgments for defendants on the theory that negligence and proximate cause under undisputed facts present only questions of law. *Lake Shore & Michigan Southern Ry. Co.* v. *Liidtke, An Infant,* 69 Ohio St., 384, 69 N. E., 653; *Davis, Dir.,* v. *Atlas Assurance Co., Ltd.,* 112 Ohio St., 543, 147 N. E., 913; *Buell, Admx.,* v. *New York Central Rd. Co.,* 114 Ohio St., 40, 150 N. E., 422; *Detroit, Toledo & Ironton Rd. Co.* v. *Rohrs,* 114 Ohio St., 493, 151 N. E., 714; *Pennsylvania Rd. Co.* v. *Rusynik,* 117 Ohio St., 530, 159 N. E., 826, 56 A. L. R., 538; *E. Kahn's Sons Co.* v. *Ellswick,* 122 Ohio St., 576, 172 N. E., 668; *Columbus, Delaware & Marion Electric Co.* v. *O'Day, Admx.,* 123 Ohio St., 638, 176 N. E., 569; *Pennsylvania Rd. Co.* v. *Moses,* 125 Ohio St., 621, 184 N. E., 8; *New York Central Rd. Co.* v. *Stevens, Admr.,* 126 Ohio St., 395, 185 N. E., 542, 87 A. L. R., 884; *Gumley, Admr.,* v. *Cowman,* 129 Ohio St., 36, 193 N. E., 627; *Pennsylvania Rd. Co.* v. *Townsend,* 130 Ohio St., 554, 200 N. E., 772, 104 A. L. R., 309; *Patton, Admx.,* v. *Pennsylvania Rd. Co.,* 136 Ohio St., 159, 24 N. E. (2d), 597.

In *Lawrence* v. *Toledo Terminal Rd. Co.* (1950), 154 Ohio St., 335, 96 N. E. (2d), 7, the court refused to apply the doctrine of the *Zone Cabs case* and emphasized that the issue of proximate cause is one for the jury *provided that the state of the record is such that reasonable minds may differ on the conclu-*

*sions to be drawn from the evidence on that issue.* In *Ziebro, Admx.,* v. *City of Cleveland* (1952), 157 Ohio St., 489, 106 N. E. (2d), 161, the court again refused to apply the *Zone Cabs case* in a wrongful death action involving a pedestrian. In that case, the evidence was undisputed that immediately before the street-car reached the place of injury the decedent (who would be clothed with the presumption of freedom from negligence) was on the track. The court said that decedent's presence there, under the facts disclosed by the record, was clearly a proximate cause of his injury. In the instant case, plaintiff's presence in the intersection, as a result of his failure to reasonably ascertain that he could enter safely, was likewise clearly a proximate cause of his injury.

This is the third appeal within the last month involving a verdict or judgment in favor of the unpreferred driver, and it is apprehended that the trial courts in this district may be construing *Meek* v. *Schwanbeck, supra,* as holding that the issue of proximate cause in intersection cases is always one for the jury. Therefore, to the extent that *Meek* v. *Schwanbeck* may be so construed, it is overruled.

The judgment of the Municipal Court is reversed, and final judgment is entered for the defendant; and the cause is remanded thereto for costs, including costs of the bill of exceptions.

*Judgment reversed and final judgment for defendant.*

DEEDS, J., concurs.

CONN, J., dissenting. I respectfully dissent from the conclusion reached by my associates that final judgment should be entered for the defendant. The record discloses a conflict in the evidence, and a jury issue is presented. However, in my opinion, the verdict and judgment are not sustained by sufficient evidence, and the cause should be remanded for a new trial.

The rule in negligence cases still uniformly recognized is that, in the absence of conflict, no fact issues arise for submission to the jury, and in such case the issues of negligence and

contributory negligence, and also the issue of proximate cause, are issues for the determination of the court as matters of law.

On the other hand, where the record discloses a material conflict in the evidence and, upon consideration thereof, reasonable minds may reach different conclusions on one or more issues of fact, a jury question is presented, and the judgment of the court is predicated on the jury's finding. When this procedure is followed, the constitutional right of a litigant to a jury trial is preserved inviolate.

The scintilla rule has been definitely repudiated in this state and in its stead the application of the rule of "reasonable minds" has been recognized as a standard for the guidance of the trial court. *Hamden Lodge* v. *Ohio Fuel Gas Co.* (1934), 127 Ohio St., 469, 189 N. E., 246. The court held in the *Hamden Lodge case* that issues of fact are for the jury "where from the evidence reasonable minds may reach different conclusions upon any question of fact."

The application of the rule of reasonable minds was given recognition, in effect, by the Supreme Court in a number of cases prior to the *Hamden Lodge case,* as appears from the citations found in the court's opinion. We call particular attention to the cases of *Jacob Laub Baking Co.* v. *Middleton* (1928), 118 Ohio St., 106, 160 N. E., 629, and *Painesville Utopia Theatre Co.* v. *Lautermilch* (1928), 118 Ohio St., 167, 160 N. E., 683.

In the *Laub Baking Co. case, supra,* so far as applicable here, the court held that where, upon the record, the jury, as "fairminded men" should reasonably arrive at one conclusion, it is the duty of the trial court to direct a verdict. This was a malicious prosecution case. The advice of counsel was set up as a special defense by defendant. *It was undisputed* that counsel who gave the advice was familiar with all the facts, as shown by the record made in previous litigation. Final judgment was entered for plaintiff in error.

On the other hand, as held in the *Painesville Utopia Theatre case, supra,* "whenever, from *conflicting evidence* of the same witness or different witnesses, it becomes necessary to weigh such conflicting evidence * * *," issues of fact thus raised are for the jury.

Subsequent to the *Hamden Lodge case,* it does not appear that the Supreme Court has extended the application of the "rule of reasonable minds." To illustrate, I cite some cases, well known to the profession, wherein the evidence together with reasonable inferences were in conflict, and where the trial court's refusal to direct a verdict and enter judgment was upheld. See: *Horwitz* v. *Eurove* (1934), 129 Ohio St., 8, 193 N. E., 644, 96 A. L. R., 782; *Smith* v. *Zone Cabs* (1939), 135 Ohio St., 415, 21 N. E. (2d), 336; *Glasco* v. *Mendelman* (1944), 143 Ohio St., 649, 56 N. E. (2d), 210; *Betras, Admr.,* v. *G. M. McKelvey Co.* (1947), 148 Ohio St., 523, 76 N. E. (2d), 280.

The later case of *Lawrence* v. *Toledo Terminal Rd. Co.* (1950), 154 Ohio St., 335, 96 N. E. (2d), 7, negatively supports the conclusion already suggested. In its opinion, the court pointed out that there was evidence to support the claim of plaintiff that defendant was negligent in failing to maintain a good and sufficient crossing but held, as a matter of law, on the *undisputed evidence,* that plaintiff's own negligence was the proximate cause of his injury.

I call attention also to *Ziebro, Admx.,* v. *City of Cleveland* (1952), 157 Ohio St., 489, 106 N. E. (2d), 161, a wrongful death case. The trial resulted in a substantial verdict for plaintiff administratrix. Following a remittitur, judgment was entered for plaintiff. The Court of Appeals, being unable to agree that the judgment was manifestly against the weight of the evidence and, finding no other prejudicial error, affirmed the judgment.

On the issue of contributory negligence of plaintiff's decedent, the Supreme Court entered final judgment for defendant. While it appeared that there was some dispute in the evidence, the court said in its opinion, "but all of which, for the purpose of this decision, *must be accepted as true.*" The court held that decedent's presence on the streetcar tracks, without any explanation or reason for his presence there, "was clearly a proximate cause of his injury," and final judgment was entered for defendant.

In the instant case, the evidence and inferences that arise are conflicting in some material respects. It is undisputed, however, that the view of the intersection was practically unob-

structed, and that the speed of defendant's motor vehicle, as it approached the intersection, was in excess of 25 miles per hour, prima facie unlawful and negligent.

A conflict is shown respecting the distance of defendant's vehicle from the point near the intersection where plaintiff observed the headlights of defendant's vehicle, which plaintiff thought was about 90 yards distance therefrom, and the claim of plaintiff that he was almost through the intersection when the collision took place. Plaintiff conceded, upon the trial, that he had misjudged the distance that defendant's vehicle was from the intersection.

Defendant's evidence tended to show that his motor vehicle was much closer than plaintiff's estimate of his distance from the intersection when plaintiff mistakenly concluded he could safely proceed through the intersection; that when defendant first saw plaintiff's vehicle he "jammed on his brakes" and brought his vehicle almost to a stop before the impact; that defendant's vehicle was near the center of the street at the time of the impact; that defendant's left front fender came in contact with the bumper and right rear fender of plaintiff's vehicle; and that following the impact defendant's vehicle "didn't move."

The evidence was conflicting as to the place of impact, the position of the vehicles following the collision, the location of the skidmarks made by defendant's vehicle, and in some other respects.

It is inferable from plaintiff's evidence that the motor vehicles collided with considerable force. Such inference does not appear to be raised on defendant's testimony.

The defendant, having lost his preferential right of way by driving his motor vehicle at a speed in excess of 25 miles per hour as he approached the intersection, owed a duty to plaintiff to exercise ordinary care, and plaintiff owed defendant a like duty. If it could be said, as a matter of law, that both plaintiff and defendant were negligent, there remains the further issue of fact whether plaintiff's negligence was a proximate cause of the collision.

In my opinion, it is not an oversimplification, or merely an elementary, abstract rule to point out that in negligence cases

where the material facts and reasonable inferences, disclosed on the record, are in conflict, issues of fact are presented, upon which reasonable men, in resolving the facts, may reach different conclusions relative to such issues as negligence, contributory negligence or proximate cause.

When we apply the rule of reasonable minds as a test, the right of trial by jury would ordinarily be preserved where issues of fact arise by reason of conflicting evidence.

In the instant case, on the issues of fact, the jury found for the plaintiff. The record discloses no prejudicial error in the submission of the case. Under these circumstances, the jury's verdict and the judgment thereon, in my opinion, can not be disturbed by this court, unless such finding is considered to be manifestly against the weight of the evidence. As already indicated, I would remand the cause for a new trial.