SMITH, APPELLANT, *v.* JONES, APPELLEE.[*]

(No. 575—Decided October 27, 1960.)

*Messrs. Rush, Henderson & Rush*, for appellant.
*Messrs. Gardner & Acton* and *Messrs. Pickrel, Schaeffer & Ebeling*, for appellee.

WISEMAN, P. J.   This is an appeal on questions of law from the judgment of the Common Pleas Court of Clark County entered on a verdict directed in favor of the defendant at the close of plaintiff's case.

Plaintiff sued for damages growing out of an automobile

[*]Motion to certify the record overruled, January 25, 1961.

collision which took place in the city of Springfield at the intersection of South Limestone Street and Grand Avenue on January 7, 1956, at 5 p. m.  Plaintiff alleges that he was operating his Ford automobile in a westerly direction on Grand Avenue, and, upon reaching South Limestone Street, he brought his automobile to a complete stop; that he then attempted to cross Limestone Street, after first ascertaining that he could cross in safety; that the defendant was operating his De Soto automobile in a southerly direction on Limestone Street and was approaching from the north of the intersection; and that a collision occurred causing plaintiff great personal injury.  Plaintiff alleges that the defendant was driving at a rate of speed of 55 miles per hour, in violation of the city ordinances.  The defendant's answer was in the nature of a general denial.

The evidence shows that South Limestone Street is a main thoroughfare extending in a northerly and southerly direction; and that Grand Avenue extends in an easterly and westerly direction, and intersects South Limestone Street at right angles, except that there is a slight jog to the north on the west side of South Limestone Street.  There were stop signs on Grand Avenue, requiring vehicles to stop before crossing South Limestone Street.  Plaintiff and defendant were the only occupants of the respective automobiles.  South Limestone Street is 46 feet wide between curbs at the point of collision.  A driver headed in a westerly direction in a stopped position at the east side of South Limestone Street has an unobstructed view north on Limestone Street for a distance of more than a city block.  The roadbed was dry, the weather was clear and the visibility was good.

The evidence shows that the defendant was driving at a rate of speed of 55 miles per hour, in a 35 mile per hour zone; that the defendant applied his brakes and skidded a distance of 130 feet before the impact; that the front end of defendant's automobile struck the door on the right side of the plaintiff's automobile; that plaintiff's automobile was knocked sidewise 14 feet and into the northbound lane of Limestone Street; and that defendant's automobile swung around and travelled an additional 21 feet before coming to a stop.

There is nothing in the evidence to show that the plaintiff

was aware of the approach of defendant's automobile or that a collision was likely to occur. The plaintiff did not testify with respect to the manner in which the collision occurred due to a loss of memory. Two witnesses called by the plaintiff testified relative to the actions of the two drivers immediately before the collision.

The evidence shows that the plaintiff, after stopping at the east curb of Limestone Street, drove his automobile across the intersection in the westbound lane of Grand Avenue, and into the southbound lane of traffic on Limestone Street, at a rate of speed of from 8 to 10 miles per hour, without stopping, changing the direction, or reducing the speed of his automobile.

The evidence further shows that the defendant was driving on a main thoroughfare and approaching the intersection to plaintiff's right. The plaintiff contends that under the evidence the defendant had lost the right of way because of excessive speed. The defendant contends that, assuming the defendant lost the right of way and was negligent, the evidence shows that the plaintiff was guilty of contributory negligence as a matter of law.

The court, in passing on the motion to direct a verdict, dictated into the record his decision on the motion. The court stated that "for the purpose of the motion it may be conceded that the defendant, although he had the right of way by reason of operating his vehicle on a through street, nevertheless forfeited the right of way because of the unlawful manner in which he was then driving, namely, at the time 55 miles per hour." The court then stated that it is conceded that plaintiff stopped as required by law before entering the intersection; and then stated that "the law likewise imposes a duty upon the driver thereafter to yield the right of way to the vehicles traveling on the main highway." Generally, this is a correct statement of the law. The court continued by stating it was the duty of the unfavored driver to keep a lookout for vehicles on the main thoroughfare upon entering and in crossing the intersection. We conceive this to be a correct statement of the law. The court gave due recognition to the rule of law laid down in *Morris* v. *Bloomgren*, 127 Ohio St., 147, 187 N. E., 2, 89 A. L. R., 831, which held:

"3. The phrase 'in a lawful manner,' found in Section 6310-28, General Code, is a *sine qua non* obligation placed upon the vehicle upon which the right of way is conferred. If such vehicle is not proceeding in a lawful manner in approaching or crossing the intersection, but is proceeding in violation of a law or ordinance, such vehicle loses its preferential status and the relative obligations of the drivers of the converging vehicles are governed by the rules of the common law."

The court then proceeded to determine the question whether plaintiff was guilty of contributory negligence. The court rested its decision on *Willard* v. *Fast*, 75 Ohio App., 225, 61 N. E. (2d), 807 (motion to certify overruled January 31, 1945); *Rubin* v. *Wasser*, 61 Ohio Law Abs., 76, 103 N. E. (2d), 293; *Bevilacqua* v. *Mack*, 92 Ohio App., 63, 109 N. E. (2d), 565; *Schaefer* v. *Cincinnati Street Ry. Co.*, 75 Ohio App., 288, 62 N. E. (2d), 102; and *Spitler* v. *Morrow*, 100 Ohio App., 181, 136 N. E. (2d), 321. The rationale of these opinions is that the fact that the driver on the preferential thoroughfare forfeits the right of way by driving in an unlawful manner, does not relieve the unfavored driver of the duty to look for approaching vehicles on the main thoroughfare and to exercise ordinary care to avoid a collision. If the unfavored driver fails to exercise ordinary care he is guilty of contributory negligence and, if such negligence contributes to the proximate cause of the collision, he cannot recover.

In the *Willard case*, where the unfavored driver proceeded to enter the intersection without looking to the right and was struck by a vehicle approaching from the right, the court held that the unfavored driver was guilty of contributory negligence which prevented recovery even though the favored driver was negligent and had lost his preferential right of way by driving in an unlawful manner. In the *Rubin case*, the plaintiff, the driver on the left, came to the intersection and stopped, looked to the right and observed the defendant approaching from the right; and the plaintiff proceeded to cross the intersection in low gear, although he observed the defendant approaching at an excessive rate of speed. The court found that the defendant had lost the preferential right of way, but that under the facts the plaintiff was guilty of contributory negligence which pre-

vented recovery. The trial court erred in overruling defendant's motion for a directed verdict. In the *Bevilacqua case*, the driver on the left entered the intersection at a slow rate of speed and did not see the defendant's automobile approaching from the right at an excessive rate of speed until he was in defendant's path. The view of defendant's automobile was obstructed and plaintiff had only 10 feet of unobstructed view. The court, on page 69 of the *Bevilacqua case* (92 Ohio App.), said:

"* * * assuming that the defendant, as contended by the plaintiff, was negligent in operating his automobile at an excessive speed and upon the wrong side of the paved portion of the roadway, the evidence shows that the plaintiff was negligent as a matter of law in failing to use ordinary care for his own safety in not looking for the approach of the automobile from his right at such a distance from the paved portion of the intersection that he could safely stop the vehicle driven by him before entering the path of the approaching automobile, and in not operating his automobile in such a manner that he could look to the right for approaching vehicles and safely bring it to a stop before entering the path of the approaching car of defendant; and that as a matter of law such negligence on the part of the plaintiff contributed to cause the injuries of which he complains."

In the *Schaefer case* (75 Ohio App., 288), the syllabus is as follows:

"1. Where a driver of an automobile stops before entering a street intersection, looks to the right, sees a trolley bus approaching about 400 feet away, but does not know its speed, then proceeds into the intersection a distance of 40 feet into the path of the trolley bus, without again looking and without listening, no case is presented for submission to the jury for damages to such driver resulting from the collision between the vehicles that occurred at the intersection of their paths.

"2. If evidence does not furnish a reasonable basis upon which it can be inferred that the collision probably resulted through defendant's negligence without any contributory negligence, the defendant's motion for an instructed verdict is properly sustained."

The court, in discussing the former opinion in *Nunn* v. *Davidson,* 55 Ohio App., 297, 9 N. E. (2d), 732, on page 293 (of 75 Ohio App.) said:

"To the extent that *Nunn* v. *Davidson, supra,* holds that the servient vehicle driver is under no duty to look before entering the path of the dominant vehicle, it is overruled."

In the *Spitler case* (100 Ohio App., 181), the second and third paragraphs of the syllabus are as follows:

"2. It is the duty of a driver approaching an intersection to look for any vehicle approaching such intersection from his right and to do so at such time and place and in such manner as will make his looking effective.

"3. An unfavored driver about to enter an intersection at night, who observes another vehicle approaching from his right as well as from his left and, without reasonably ascertaining the distance and speed of such vehicle, decides that he can cross in safety, does not exercise that degree of care which an ordinarily unfavored prudent driver should exercise under such circumstances in proceeding into and across the intersection, and is guilty as a matter of law of negligence proximately contributing to injury and damage resulting therefrom."

We approve and follow the principle of law laid down in the above cited cases. In the application of the proper principle of law to the facts in this case, which we construe most strongly in favor of the plaintiff, we cannot say that reasonable minds may differ on the conclusions to be drawn from the evidence. The trial court did not err in directing a verdict for defendant.

The three claimed errors assigned which involve the same issue are not well made.

*Judgment affirmed.*

CRAWFORD and KERNS, JJ., concur.