## SCHAEFER, Appellant, v. CINCINNATI STREET RAILWAY COMPANY, Appellee.

Ohio Appeals, First District, Hamilton County.

No. 6483. Decided February 19, 1945.

John W. Cowell, Cincinnati, for appellant.
Leo J. Brumleve, Cincinnati, for appellee.

### OPINION

By MATTHEWS, J.

The trial court, at the close of plaintiff's evidence, instructed the jury to return a verdict for the defendant and

entered judgment on that verdict. This appeal is from that judgment.

At about four o'clock in the morning of January 26th, 1942, a collision took place between an automobile operated by the plaintiff and trolley bus owned and operated by the defendant. The plaintiff was proceeding northwardly on Kirby Road and the defendant's bus was proceeding westwardly on Chase Avenue in the City of Cincinnati. The collision took place in the northeast quarter of the intersection of those streets, when the front of plaintiff's automobile was on a line with the north curb projected. The streets were from thirty-five to forty feet wide, from curb to curb.

That intersection was controlled by traffic lights, but at that hour in the night the red and green lights were not operating. The amber light was flashing on and off as a warning to be careful.

The defendant approaching the intersection from the right, in a lawful manner, had the right of way.

The plaintiff testified that she had attended a social gathering until about three o'clock in the morning. She took a companion to her home and was proceeding to take another to her home when this accident occurred. She testified that she stopped just before entering the intersection and looked in both directions on Chase Avenue for approaching traffic and saw the defendant's trolley bus about a square or four hundred feet away. There was no other traffic approaching and her vision was not obstructed in any way. She proceeded into the intersection at from ten to twenty miles per hour without looking to the right and did not see the trolley bus again until she was in its path, and it was almost, if not actually, against her automobile. In fact, she did not know whether she saw it just before the collision or whether she became aware of its presence by feeling the impact.

The plaintiff's companion, sitting to her right, corroborated her in all material respects. She testified that she watched the trolley bus approach, but said nothing to the plaintiff to warn her, thinking that they would get across before the bus reached them. She estimated the speed of the bus at forty to forty-five miles per hour, and stated that that speed was maintained from the time she saw it as they entered the intersection until the collision.

Sec. 6310-28a GC, gives the right of way to vehicles approaching from the right over vehicles approaching from

a different direction into their path. This gave traffic approaching this intersection on Chase Avenue the right to "proceed uninterruptedly in a lawful manner in the direction in which it" was moving in preference to traffic approaching on Kirby Road. This required those approaching on Kirby Road to use their faculties to ascertain whether anyone was approaching on Chase Avenue in such proximity to the intersection as to indicate the likelihood of a collision unless one or the other yielded—and in case of doubt, the rule required that those on Kirby Road should control their vehicles until the doubt was removed and the situation justified them in proceeding notwithstanding the preferential right of those approaching on Chase Avenue.

Assuming that the plaintiff's conclusion that the defendant's bus was so far away from the intersection of the path that she intended to travel that both traveling in a lawful manner there would be no collision, that conclusion did not give her any absolute right of way across the intersection. Or, if the defendant's bus lost its right of way by approaching the intersection at an unlawful speed, that did not shift the absolute right to the plaintiff. The maxium effect would be to make inapplicable the statute to the situation and thereupon "the relative obligations of the drivers of the converging vehicles are governed by the rules of the common law." **Morris v Bloomgren, 127 Oh St 147.** Both were required to exercise reasonable care and if both were negligent and the collision was the direct cause of the joint negligence, neither could recover.

Now, what does the record show as to the plaintiff's conduct? It shows that she stopped and looked just before she entered the intersection and saw defendant's bus four hundred feet away approaching this intersection. She did not know how fast it was moving. She did know that no matter what its speed, its progress would take it eventually into the path that she intended to travel. Nevertheless, she failed to use either her sight or hearing during the more than thirty feet that she traveled before the collisison. The record does not present a case of the exercise of her faculties to some extent while she was in the intersection, which might present a case for the trier of the facts. Had she looked while crossing, she would have seen the bus approaching before she entered its path. Had she listened, she would have heard it. She testified she did not look and it is clear she did not listen. Had she done so, her false sense of security would have been dispelled. No ex-

cuse is offered for the failure to look or listen. The necessity for an explanation of the plaintiff's failure to look or listen for vehicles approaching her path from the right is clear, when the surrounding circumstances are considered. The plaintiff's testimony that she saw defendant's bus four hundred feet away, when she was forty feet away from the point of collision and that she traveled at the rate of from ten to twenty miles per hour to the point of collision would require the bus to travel at an incredible speed to reach the point of collision at the same time as the plaintiff. At plaintiff's highest estimate of her own speed, it would have required the bus to travel at almost one hundred miles per hour to have collided with her car, and at her lowest estimate it would have required it to travel at twice that speed. That is incredible. We are not required to believe it. **Black v City of Berea, 137 Oh St 611, at 627.** Under such circumstances, our conclusion is that the record shows as a matter of law that the plaintiff was negligent and that her negligence directly contributed to the collision, or that the evidence furnished no reasonable basis as to the probable cause of this collision.

Appellant's counsel relies upon **Nunn v Davidson, 55 Oh Ap 297,** for the proposition that the plaintiff was under no legal duty to look for the approaching vehicles on reaching the middle of the street but is only required to exercise reasonable care under the circumstances. The opinion referred to disposed of two cases—one, by the operator of the automobile, and the other, by the administrator of a guest riding in the automobile, who was killed in the collision. Of course, the issue of contributory negligence was different in the two cases. As to the driver, the statute imposed an absolute duty to yield the right of way to the automobile approaching her path in a lawful manner—and that imposed an absolute duty to determine in advance of entering the intersecting path that there would be no conflict. As to the driver, it is not the law that there is no duty to look to the right in the middle of the street. Even though the driver had looked before entering the intersection, the absence of vehicles then was no absolute assurance that vehicles would not lawfully approach and enter the intersecting path from the right before the servient vehicle had crossed it. Such a vehicle could have entered the street from abutting private property. The place where looking would be effective, is just before the paths intersect, as was pointed out by this Court in the case of **Coshun v Mauseau, 62 Oh Ap 249,** in which we said at 251:

"It is the duty of one who is required to regulate his progress in a certain direction to, so far as is reasonably possible, ascertain the presence of what he is required to observe from a position where this can be done effectively. * * * *

"It is also apparent that one who is proceeding across an intersection under such circumstances that he may be required to stop and concede a right of way must proceed at a speed sufficiently slow to permit him to stop the vehicle which he is operating promptly and thus not cross the path of the vehicle, having the right of way, proceeding across his path."

This case was quoted from with approval in the case of **Keller v Miller, 67 Oh Ap 361.**

To the extent that Nunn v. Davidson, supra, holds that the servient vehicle driver is under no duty to look before entering the path of the dominant vehicle, it is overruled.

But appellant's counsel urges that in Coshun v Mauseau, supra, this Court reversed the judgment and remanded the cause for a new trial, and he says that is what he is asking the Court to do in this case. In making this contention, he overlooks the fact that in that case the reversal of the judgment was in favor of the driver of the vehicle having the right of way, against whom there was no substantial evidence of negligence, whereas, in this case, he is asking a reversal of a judgment rendered in favor of the operator having the right of way and against whom the plaintiff failed to produce evidence furnishing a reasonable basis for the conclusion that it had forfeited its right of way and negligently caused the collision, while the plaintiff was in the exercise of due care.

While there are differences in the facts, we are of the opinion that this case falls within the class with **Williams v Judd, 23 Abs, 450,** in which we held that there was no substantial evdence of liability to submit to the jury.

For these reasons, the judgment is affirmed.

HILDEBRANT, P. J., MATTHEWS & ROSS, JJ., concur in the syllabus & opinion.