OPINION
{¶ 1} Defendant-appellant, Amy Mullins, appeals her conviction in the Franklin County Municipal Court on one count of driving under the influence of alcohol, in violation of Columbus City Code 2133.01, and one count of failure to obey signs regulating designated lane usage, in violation of Columbus City Code 2131.08(c). Appellant timely appealed her convictions and presents three assignments of error for our review, as follows:
Assignment of Error Number One
The defendant was deprived of her right to a fair trial when the jurors were allowed to hear evidence indicating that this was not the first time that the defendant had been in such difficulty and her right to a fair trial was further compromised when the officer was allowed to testify, over objection, about breathalyzer test results appearing on the instrument's display panel during an invalid test.
Assignment of Error Number Two
The trial court erred when it failed to preserve, as part of the record, the written jury instructions that were submitted to the jury for use during deliberations.
Assignment of Error Number Three
The evidence was insufficient to sustain the defendant's conviction for violating section 2131.08(c) of the columbus city code, the failure to obey directions of designated lane signs, when the city failed to present any evidence whatsoever of the existence of any designated lane signs or the violation thereof.
 {¶ 2} The facts pertinent to this appeal are as follows. Appellant went to Jack's Bar in the Clintonville area of Columbus at approximately 9:00 p.m. on the evening of November 26, 2002. She remained there until approximately 12:00 a.m. on November 27, 2002. According to appellant and her friend, Leola Delrosa ("Delrosa"), appellant consumed two 12-ounce cans of beer during this period of time. Appellant left Jack's Bar but returned at approximately 1:00 a.m. to pick up Delrosa and give her a ride home. At approximately 1:45 a.m., appellant and Delrosa exited the parking lot of a White Castle Restaurant located at the intersection of Greenlawn Avenue and High Street on the near South side of Columbus. While appellant was driving southbound on High Street toward Delrosa's residence, a Columbus police officer observed appellant's vehicle drift across the broken white line separating the two southbound lanes. The officer noticed that appellant's vehicle straddled the lane marker for approximately one block. The officer followed appellant as she turned left onto Markison Avenue, whereupon he activated his overhead beacons.
 {¶ 3} Upon approaching appellant's vehicle, the officer detected an odor of an alcoholic beverage coming from inside it. The officer conducted several field sobriety tests upon appellant, and after determining that she had either failed or refused to complete the tests, he placed appellant under arrest and transported her to the Franklin County Jail. At the jail, the officer attempted to administer a breath test. Appellant blew into the machine, but ultimately stopped blowing before a valid result could be obtained, and the machine registered the test as having been refused.
 {¶ 4} Appellant was subsequently charged with one count of driving under the influence of alcohol and one amended count of failure to obey signs regulating designated lane usage. Her case proceeded to trial, whereupon a jury convicted her of the charge of driving under the influence. The second count was tried to a judge because it is classified as a minor misdemeanor to which no right to a trial by jury attaches. The court found appellant guilty as charged. The court sentenced appellant to 365 days of imprisonment, with 245 days suspended on condition of five years of reporting probation. The court also imposed a five-year driver's license suspension and a total fine of $600.
 {¶ 5} In her first assignment of error, appellant argues her conviction for driving under the influence must be reversed because of two statements made by the arresting officer during his trial testimony.
 {¶ 6} In the first of these statements, the officer testified that while appellant was seated in his police cruiser following her arrest, she told him that, ". . . because of me, she's going to lose her job, that this isn't the first time that she's had this —." Defense counsel immediately interposed an objection, which was followed by a sidebar conference and then a recess during which the judge and counsel discussed the statement. During these discussions, defense counsel requested a mistrial, arguing that the statement was irrelevant prior "bad acts" evidence whose prejudicial nature mandated a mistrial. The prosecution argued that the officer's statement was not testimony regarding any prior bad acts, but only a retelling of a statement appellant herself had made. The prosecution argued that a limiting instruction would be appropriate and that a mistrial was unnecessary. The trial court agreed. The court instructed the jury to disregard the officer's statement, whereupon direct examination of the officer continued.
 {¶ 7} On appeal, appellant argues that the court should have granted her request for a mistrial. She asserts that a jury would make impermissible inferences that appellant was, "a multiple and dangerous offender whom they needed to convict." (Brief of appellant at 10.) Appellant argues the trial court's admonition to the jury cannot "unring the bell" and, as such, appellant was prejudiced to such an extent that she was denied a fair trial. Appellee argues that the officer's statement was not so prejudicial that it could not be overcome by the trial court's curative instruction. In fact, appellee urges, the statement may imply something as minor as appellant fearing for her job because of previous work-rule violations, or, at most, that appellant has had some prior contact with the criminal justice system. We agree.
 {¶ 8} We will not reverse the trial court's decision to deny the motion for mistrial unless the trial court abused its discretion. State v. Treesh (2001), 90 Ohio St.3d 460, 480. The first step in analyzing these situations is to determine whether the actions were improper. State v. Lott (1990),51 Ohio St.3d 160, 165. Evid.R. 401 defines relevant evidence as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Evid.R. 402, evidence that is not relevant is not admissible. The officer's unprompted recitation of appellant's post-arrest statement was irrelevant; thus, it was properly stricken by the trial court.
 {¶ 9} The remaining question for our consideration is whether the trial court improperly refused to declare a mistrial based on the officer's testimony about appellant's alleged reference to prior bad acts. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121.
 {¶ 10} In this case appellant admitted to consuming alcohol on the evening of her arrest. The officer testified to the following additional facts. Appellant's vehicle drifted across marked lane designations and continued to occupy two lanes simultaneously for an entire city block. When the officer requested appellant's driver's license, she initially presented some other type of identification. The officer reiterated his request, and, after some fumbling with her wallet, appellant then produced her license. While waiting for the license, the officer detected an odor of alcoholic beverages emanating from appellant's vehicle. Appellant's speech was slurred and her eyes were bloodshot and glossy. Appellant swayed slightly as she exited her vehicle, and swayed during administration of the walk-and-turn and the one-leg-stand field sobriety tests. She stepped outside the straight line she was instructed to walk during the walk-and-turn test, and almost lost her balance while making the "turn" portion of the walk-and-turn test. At that point, she refused to complete the test and told the officer she was going to go home. She also failed the one-leg-stand by putting her foot down repeatedly prior to the conclusion of the test. Appellant's eyes displayed a lack of smooth pursuit of the officer's pen during the horizontal gaze nystagmus test, which indicated to the officer that appellant had failed this test as well.
 {¶ 11} Appellant presented the testimony of Delrosa. Delrosa testified that appellant arrived at Jack's Bar at approximately 9:00 p.m. that evening, and consumed two beers over the course of the next three hours. Appellant left to drive her brother home, then returned at approximately 1:00 a.m., whereupon appellant and Delrosa left together. Delrosa stated that she has, in the past, observed appellant while appellant was "drunk" and while she was "tipsy" and testified that she can tell the difference. When appellant arrived at Jack's for the second time she did not seem at all intoxicated and was neither "drunk" nor "tipsy." Immediately prior to the traffic stop that led to appellant's arrest, Delrosa did not notice anything unusual about the manner in which appellant was driving. Because she is a diabetic, Delrosa does not drink and is usually the designated driver within the pool league to which she and appellant belong. She is also a former bartender. Thus, she stated, she is accustomed to monitoring her friends' alcohol consumption closely, and takes her friends' keys when she feels they have consumed too much alcohol to drive safely.
 {¶ 12} Appellant testified in her own defense. She testified that she was employed by Insight Communications as a cable installer. The job entails carrying an 85-pound ladder and climbing up and down telephone polls. She testified that she worked a 13-hour day on the day preceding her arrest, and, with her supervisor's permission, had retained use of a company-issued van for personal use that evening. It had snowed intermittently throughout the day and the weather was cold and windy. She stated that, on such a windy day, the wind rushes through the rungs of the ladder attached to the company van, and "jerks" it, usually requiring the driver to keep both hands firmly on the steering wheel.
 {¶ 13} Appellant testified that she ate a spaghetti dinner with her family when she arrived home, which was approximately 7:30 p.m. She testified she then went to Jack's Bar and, while there, consumed two 12-ounce cans of Bud Light between 9:00 p.m. and midnight on the evening of her arrest. She left the bar at midnight in order to take her brother home, and returned at approximately 1:00 a.m. to give Delrosa a ride home. The only beverage she consumed while away from Jack's Bar was iced tea. Appellant testified that she did not straddle the lane markings on South High Street immediately before the officer initiated a stop of her vehicle. She denied that she initially handed the officer something other than her driver's license after the license was requested. She confirmed that she had difficulty retrieving her driver's license, but explained that this was due to the design of her wallet; she stated that she always has difficulty locating the separate compartment within which she stores her driver's license.
 {¶ 14} Appellant denied having any trouble balancing after she exited her vehicle. Appellant testified that she was able to successfully complete the one-leg stand field sobriety test, and only put her leg down when the officer told her to do so. She told the jury that the officer instructed her to stop during the walk-and-turn test before she was able to complete it, even though she was performing successfully in accordance with his instructions. She stated she never refused to perform any test. With respect to the breath test, appellant testified that she attempted to follow the officer's instructions, and to blow correctly into the machine. She denied intentionally not blowing with enough force to obtain a valid result. She stated she could not see the LED display on the machine during the test. She testified that the officer did not offer to administer urine or blood tests, but that she would have taken them if they had been offered.
 {¶ 15} The weight to be accorded the evidence and the credibility of witnesses are primarily for the trier of the facts. State v. Fanning (1982), 1 Ohio St.3d 19, 20; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In the present case, appellee presented the jury with sufficient evidence, which, if believed and accorded sufficient weight, supports appellant's conviction for driving under the influence of alcohol.
 {¶ 16} Appellant's post-arrest statement, retold to the jury by the officer, was a vague, fleeting comment that merely hints at the possibility of other bad acts. Moreover, the statement was immediately objected to and stricken by the court with an appropriate instruction. Further, as noted above, there is other evidence sufficient to establish appellant's guilt beyond a reasonable doubt. Under these circumstances, and given that juries are presumed to have followed instructions,[1] the court's admonition cured any error, and we will not reverse for the court's refusal to grant a mistrial. See State v.Vanbuskirk (May 27, 1982), Cuyahoga App. No. 44112; State v.Cullers (Nov. 9, 2001), Montgomery App. No. 18602; State v.Hart (June 23, 1988), Cuyahoga App. No. 53982.
 {¶ 17} In the second statement that appellant claims warranted a mistrial, the arresting officer testified that, while administering a breath test to appellant, "[s]he started to blow into the machine, and she was giving a steady tone, and she continued to give a steady tone. The BAC went up above .10 —." At this point, defense counsel interposed an objection. At a bench conference, the defense argued that any testimony regarding numerical values was irrelevant and inadmissible because a valid test result was never obtained and thus should not be introduced by appellee. The court agreed in part, ruling that the officer would be prohibited from testifying as to any numerical results displayed by the breath test machine, but he would be allowed to testify as to his observations regarding whether the numerical display was "changing." Appellant did not object at this point. The court then stated to the jury, "[t]he jury is to disregard any testimony as to any specific result. The officer's testimony as indicated would only be as to any nonspecific result as to the test."
 {¶ 18} Upon resumption of the officer's direct examination, he testified as follows:
As I stated, the tone was not beeping, it was going, "doo, doo," gives a steady tone, like an audible steady tone. You can see the display rise up, the person's level of the sample that they're giving rise [sic] up.
It continued to rise to — continued to rise as she gave a sample. And then at a certain point in time, the tone stopped, and she had her cheeks kind of puffy and they were a little bit red. And I said, "The machine's telling me you're not blowing. Why did you stop blowing? Continue to keep blowing."
And she let loose and said, "I can't, I can't. I've already blown." I said, `The machine was not done yet. It would have clicked off if you were blowing as much as you can. You still need to continue to keep blowing.'
At that point she said — you know, she said, "I'm done blowing," and she kind of threw the hose back with the mouthpiece on it.
(Tr. at 62.)
The defense made no further objection to this testimony, whereupon appellee continued with its direct examination. On appeal, appellant first asserts that the trial judge's admonition regarding numerical display testimony does not cure the error that occurred when the officer testified regarding the .10 "result." Second, she urges reversal of her conviction on account of the officer's subsequent testimony that the breath test machine's display "continued to rise." We will address each of these arguments in turn.
 {¶ 19} The record reflects, and appellant does not dispute, that the trial court immediately sustained her objection to testimony regarding any specific numerical "result" displayed on the machine while appellant was attempting to blow into it.[2] Further, the court told the jury to "disregard any testimony as to any specific result." We recognize that the court's next statement to the jury (regarding a "nonspecific result") is somewhat unclear; however, the fact remains that the court properly instructed the jury to disregard numerical results and admonished appellee to eliminate further reference to numerical results from the remainder of the officer's testimony. The jury is presumed to have followed the court's instruction.Woodard, supra. We find nothing in the record that overcomes this presumption and demonstrates that the numerical result testimony was so prejudicial as to require a reversal. Prejudicial error is an error that affects the outcome of a case.State v. Zamorski (2000), 141 Ohio App.3d 521, 526. Because the jury was presented with sufficient evidence upon which it could have based its guilty verdict, we cannot say that the testimony concerning the temporary numerical display was prejudicial.
 {¶ 20} We likewise find no prejudicial error in the officer's testimony that the BAC visual display "continued to rise." We note that appellant made no objection to this testimony, even though the trial judge gave counsel advance notice of its ruling during a bench conference. Thus, appellant waived all but plain error. On the state of the record, and for the reasons discussed above, we find this testimony was not prejudicial and decline to reverse appellant's conviction on that basis.
 {¶ 21} For all of the foregoing reasons, appellant's first assignment of error is overruled.
 {¶ 22} In her second assignment of error, appellant argues it was reversible error for the trial court to have failed to preserve the written instructions given to the jury and used in their deliberations, as is required by R.C. 2945.10(G). Appellant asserts that this failure was a "structural error" that so affected her constitutional rights that it defies "harmless error" analysis. Appellee argues the trial court's failure to comply with R.C. 2945.10(G) does not require reversal unless appellant can demonstrate that she has been materially prejudiced thereby.
 {¶ 23} R.C. 2945.10(G), provides, in part:
Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case.
 {¶ 24} A unanimous Supreme Court of Ohio recently held, inState v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, that the failure of the trial court to maintain written jury instructions with the "papers of the case" in violation of R.C. 2945.10(G) is not a structural error requiring automatic reversal. Id. at syllabus. The Perry court rejected the argument that a defendant is entitled to a conclusive presumption that such an error affected her substantial rights, thereby requiring an automatic reversal of her conviction.
 {¶ 25} Under Perry, a reviewing court must determine whether a violation of R.C. 2945.10(G) is cause for reversal by first addressing whether the error should be analyzed pursuant to the "harmless error" standard of Crim.R. 52(A) or the "plain error" standard of Crim.R. 52(B). Crim.R. 52 provides:
(A) Harmless error. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.
(B) Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
 {¶ 26} Crim.R. 52 distinguishes between errors to which a defendant objected at trial and errors that the defendant failed to raise at trial. Perry, supra, at ¶ 14. If the defendant failed to raise an error affecting a substantial right at trial, an appellate court reviews the error under the plain error standard in Crim.R. 52(B). Id. Under a Crim.R. 52(B) analysis, the defendant has the burden of demonstrating that she was prejudiced by the error before a reviewing court will reverse. "Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" Id., quotingState v. Barnes (2002), 94 Ohio St.3d 21, 27.
 {¶ 27} Alternatively, if the defendant did object to the error at trial, an appellate court reviews the error under the harmless error standard set forth in Crim.R. 52(A). Id. at ¶ 15. Under a Crim.R. 52(A) analysis, the conviction will be reversed unless the state can demonstrate the defendant has suffered no prejudice as a result of the error. Thus, while Crim.R. 52(A)mandates error correction unless the error does not affect substantial rights, Crim.R. 52(B) precludes error correction unless the error does affect substantial rights. Id. at ¶ 15, citing United States v. Olano (1993), 507 U.S. 725,113 S.Ct. 1770.
 {¶ 28} The syllabus law of Perry dictates that the trial court's failure, in the present case, to comply with R.C.2945.10(G) is not a "structural error" requiring automatic reversal. This is especially true here, where Crim.R. 52(B) would otherwise govern the case because appellant did not raise an objection to the error at trial. In such cases, courts are cautioned not to apply the structural-error analysis. Id. at ¶ 23. "For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed." Id.
 {¶ 29} Accordingly, appellant is not entitled to a conclusive presumption that the trial court's error affected her substantial rights, and thus mandates reversal. We analyze appellant's second assignment of error under the well-established principles of the plain-error standard in Crim.R. 52(B). Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 30} By its plain language, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. State v.Hill, 92 Ohio St.3d 191, 200, 2001-Ohio-141. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings.State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68; State v.Sanders, 92 Ohio St.3d 245, 257, 2001-Ohio-189. Third, the error must have affected "substantial rights." This aspect of the rule means that the trial court's error must have affected the outcome of the trial. See, e.g., Hill, supra, at 205; State v.Moreland (1990), 50 Ohio St.3d 58, 62; State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 31} Though the error complained of in the present case was clearly a "deviation from a legal rule" and thus an "error" (Perry, supra, at ¶ 8), and was also arguably "obvious," we find no indication that the trial court's failure to preserve its written jury instructions affected the outcome of appellant's trial. Thus, we find no plain error. Even if we were to find that the trial court's error affected the trial, we retain the discretion to disregard the "plain error" unless to do so would fail to correct a "manifest miscarriage of justice." Long, supra, at paragraph three of the syllabus. The record is devoid of any indication that a manifest miscarriage of justice will result should we decline to reverse appellant's conviction due to the trial court's noncompliance with R.C. 2945.10(G).[3]
Accordingly, appellant's second assignment of error is overruled.
 {¶ 32} In her third assignment of error, appellant argues that appellee presented no evidence that she violated Columbus City Code 2131.08(c), and thus it was error for the court to have convicted her of a violation thereof. In its brief and at oral argument, appellee conceded error under this assignment. A review of the record reveals the absence of evidence supporting appellant's conviction for a violation of Columbus City Code2131.08(c). Accordingly, appellant's third assignment of error is sustained.
 {¶ 33} For the foregoing reasons, appellant's first and second assignments of error are overruled and her third assignment of error is sustained. The judgment of the Franklin County Municipal Court is reversed as to appellant's conviction for a violation of Columbus City Code 2131.08(c), the judgment is affirmed with respect to appellant's conviction for a violation of Columbus City Code 2133.01, and this cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
Bowman and Petree, JJ., concur.
[1] State v. Woodard (1993), 68 Ohio St.3d 70.
[2] The record also reflects that appellant did not request a mistrial on account of this testimony.
[3] This is especially true given that the record reflects that counsel for both parties was given the opportunity to review copies of the court's written jury instructions for any errors or omissions. Immediately thereafter, the bailiff took the written instructions and verdict forms, along with the jury itself, back to the deliberation room. (Tr. at 239.)