OPINION
{¶ 1} This case is before this court on remand from the Supreme Court of Ohio's decision in State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297, which reversed this court's decision inState v. Perry, Franklin App. No. 01AP-996, 2002-Ohio-4545.
 {¶ 2} By indictment filed in February 2001, defendant-appellant, Michael L. Perry, was charged with one count of kidnapping, one count of cunnilingus rape, one count of vaginal rape, and one count of gross sexual imposition. Defendant pled not guilty and was tried before a jury. At the conclusion of trial, a jury found defendant not guilty of vaginal rape; however, it was not able to reach a verdict concerning the remaining charges.
 {¶ 3} Defendant was then retried before a second jury on the remaining charges of the indictment. At the close of evidence, pursuant to Crim.R. 29, defendant moved for an acquittal. The trial court granted defendant's Crim.R. 29 motion as to the charge of gross sexual imposition.[1] (Tr. 283.) Following deliberation, the second jury found defendant guilty of kidnapping and cunnilingus rape.
 {¶ 4} Defendant appealed his convictions to this court, asserting six assignments of error. In his sixth assignment of error, defendant asserted that "[t]he trial court committed prejudicial error by failing to make written jury instructions provided to the jury a permanent part of the record for use on appeal." We sustained defendant's sixth assignment of error, found moot the remaining five assignments of error, and remanded the cause to the trial court for a new trial. Perry, Franklin App. No. 01AP-996, 2002-Ohio-4545, at ¶ 16.
 {¶ 5} Following our decision, pursuant to App.R. 25(A), the state moved to certify a conflict; we denied the state's motion. The state also appealed our decision in State v. Perry,
Franklin App. No. 01AP-996, 2002-Ohio-4545, to the Supreme Court of Ohio, which later allowed a discretionary appeal, State v.Perry, 98 Ohio St.3d 1421, 2003-Ohio-259, and stayed our judgment. State v. Perry, 98 Ohio St.3d 1487, 2003-Ohio-1189.
 {¶ 6} The Supreme Court ultimately reversed our decision inPerry and held that "[t]he failure of the trial court to maintain written jury instructions with the `papers of the case' in violation of R.C. 2945.10(G) is not a structural error."Perry, at syllabus. See, also, id. at ¶ 24. Additionally, the Supreme Court remanded this cause "(1) to determine whether the failure of the trial court to maintain written jury instructions with the `papers of the case' is plain error under Crim.R. 52(B) and, if not, (2) to review Perry's remaining assignments of error." Id. at ¶ 26.
 {¶ 7} Pursuant to the Perry court's mandate, we first address whether the trial court's failure to maintain written jury instructions with the "papers of the case" is plain error under Crim.R. 52(B).
 {¶ 8} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In State v. Barnes
(2002), 94 Ohio St.3d 21, 27, the Supreme Court of Ohio instructed:
* * * By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *
 {¶ 9} Under Crim.R. 52(B), "the defendant bears the burden of demonstrating that a plain error affected his substantial rights. * * * Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `"prevent a manifest miscarriage of justice."'" Perry, 101 Ohio St.3d 118, 2004-Ohio-297, at ¶ 14, quoting Barnes, at 27 (quoting State v. Long [1978],53 Ohio St.2d 91, paragraph three of the syllabus). (Emphasis sic.)
 {¶ 10} In a judgment entry filed March 8, 2002, that supplemented the record, the trial court stated:
The Court has been advised that a copy of the written jury instructions that were given to the jury are not part of the record. Pursuant to Appellate Rule 9 (E), the Court makes the following modification to the record.
The Court does not have a specific recollection of every word in the instructions which were typed and given to the jury; however, in 100% of the cases in which the Court has given instructions to the jury (approximately 200 criminal trials) the Court has the Court Reporter type the definition of reasonable doubt that was read to the jury and the definitions set forth in the substantive charge that was read to the jury.
The Court Reporter does not make any changes in the written instructions. After she types the instructions, the Court reviews the instructions to compare the written instructions to the oral instructions. The only changes that are made are spelling and possible punctuation changes. When the instructions are reviewed by the Court, they are given to the bailiff to deliver to the jury once counsel, if they desire, have had the opportunity to review them.
It is the Court's belief that this happened in the above captioned because the Court has not varied from this procedure in the past.
See, also, the certificate of the court reporter (attesting that the transcript, which contains the oral jury instructions as announced in court, is true, correct, and complete).
 {¶ 11} Here, the trial court's failure to maintain written jury instructions with the "papers of the case" was a deviation from a legal rule and an obvious defect. See R.C. 2945.10(G) (requiring trial court to maintain written jury instructions with the "papers of the case"). However, based upon this record, we do not find anything to suggest that the trial court's noncompliance with R.C. 2945.10(G) affected the outcome of the case.
 {¶ 12} Having found that the outcome of the case was not affected by the trial court's failure to maintain written jury instructions with the "papers of the case," we therefore cannot conclude the trial court's error affected a "substantial right." See, e.g., Barnes, at 27 (observing that, for plain error to exist, it must affect a "substantial right," i.e., meaning that "the trial court's error must have affected the outcome of the trial"). Absent a "substantial right" having been affected, pursuant to Crim.R. 52(B), plain error cannot exist. See, generally, Crim.R. 52(B) (providing, in pertinent part, that "[p]lain errors or defects affecting substantial rights may be noticed"). See, also, Columbus v. Mullins, Franklin App. No 03AP-623, 2004-Ohio-1059, at ¶ 31 (stating that, even if a trial court's error affected the trial, an appellate court "retain[s] the discretion to disregard the `plain error' unless to do so would fail to correct a `manifest miscarriage of justice'").
 {¶ 13} Accordingly, we conclude that the trial court's failure to maintain written jury instructions with the "papers of the case" is not plain error. Defendant's sixth assignment of error is therefore overruled.
 {¶ 14} Pursuant to the Supreme Court's directive in its decision, we next review defendant's remaining assignments of error. See Perry, at ¶ 26.
 {¶ 15} In this remanded cause, defendant has asserted the following errors:
[1.] The trial court erred when it permitted the state to introduce evidence of other acts by defendant-appellant in violation of Ohio Rules of Evidence 403(A) and 404(B), thereby denying defendant-appellant his rights under the Sixth andFourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
[2.] Appellant's conviction was not supported by the manifest weight of the evidence.
[3.] The evidence against the appellant was insufficient to sustain a jury verdict of guilty.
[4]. The appellant was denied effective assistance of counsel as is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.
[5] Appellant was denied a fair trial due to prosecutorial misconduct.
 {¶ 16} Defendant's first assignment of error asserts the trial court denied him a fair trial when it permitted the state to introduce other acts evidence in violation of Evid.R. 403(A)[2] and 404(B).[3] See, generally, Chambers v.Mississippi (1973), 410 U.S. 284, 294, 93 S.Ct. 1038 (stating that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations"); State v. Ward (1999),130 Ohio App.3d 551, 557 (observing that "[t]he Supreme Court of Ohio considers the `due course of law' provision of the Ohio Constitution to be the equivalent of the `due process of law' provision in the Fourteenth Amendment to the United States Constitution").
 {¶ 17} Defendant claims the trial court erred when it impermissibly allowed: (1) evidence relating to penile-vaginal rape for which defendant was acquitted; (2) evidence relating to defendant's alleged burglary of a neighbor's house; and (3) evidence relating to defendant's alleged threats and attack of Austin Wilson, a person with whom defendant partied prior to the rape and later allegedly threatened.
 {¶ 18} Here, defendant failed to object to the victim's testimony concerning penile-vaginal penetration. Absent objection, we review the asserted error under a plain error standard. See State v. Moss (Dec. 28, 1999), Franklin App. No. 99AP-30 (stating that "`[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' State v. Williams (1977),51 Ohio St.2d 112, 364 N.E.2d 1364, paragraph one of the syllabus[.] * * * Absent an objection, plain error must be proven in order to warrant reversal"). "To prove plain error, defendant must show that, absent the alleged error, the result of the trial clearly would have been different." Id. citing Long, supra.
 {¶ 19} At trial, the victim testified:
Q. [By prosecutor] After he stuck his tongue in your vagina, what did he do then?
A. Then he pulled his pants, put it inside my vagina.
Q. Did he make you touch him at all?
A. No.
Q. Did he touch you with any other parts besides his tongue and his penis?
A. Just both. That's all.
Q. Do you know if he ejaculated?
A. Huh?
Q. Did he ejaculate?
A. I don't understand that.
Q. Did he come?
A. I don't know.
Q. About how long did this go on? How long did he have his penis inside of you?
A. Not that long.
Q. Now, what happened when he stopped?
A. He just stopped. He got up like —
Q. Did he say anything when he stopped?
A. Apologized.
Q. He apologized. What did he say?
A. He said, I'm sorry I did that to you.
Q. Did you put your clothes back on?
A. Uh-huh.
Q. After you put the clothes back on, what did you do?
A. He walked me home.
Q. He walked you home. He walked home with you?
A. (Nods head in an affirmative response.)
(Tr. 109-111.)
 {¶ 20} Additionally, the victim earlier testified that defendant "dragged me" and "grabbed my arm, then grabbing my neck, then took me on the porch." (Tr. 106.) The victim further testified that defendant told her that "I'm going to kill you," (Tr. 107), and defendant "took off the left side of my pants and socks off" and "he put his tongue in my vagina area" (Tr. 108.) The victim also earlier testified that she did not want defendant to put his tongue in her vaginal area. (Tr. 108-109.) Thus, prior to her testimony about penile-vaginal penetration, the victim provided her account of the cunnilingus rape and kidnapping.
 {¶ 21} Although the trial court erred by allowing into evidence the victim's testimony concerning penile-vaginal penetration, given the victim's earlier testimony concerning cunnilingus, we cannot find that "absent the alleged error, the result of the trial clearly would have been different." Moss,
supra. See, also, State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus (holding that in a criminal trial "the weight to be given the evidence and credibility of the witnesses are primarily for the trier of the facts"). Consequently, we cannot conclude that by allowing the victim's testimony about penile-vaginal penetration, the trial court committed plain error.
 {¶ 22} Defendant also asserts that the trial court erred by allowing into evidence photographs of the victim's reddened cervix that implied penile penetration, which were taken by a sexual assault nurse examiner who examined the victim following the rape. (Tr. 233-235, 282.)
 {¶ 23} Whether to admit or exclude evidence is within the broad discretion of the trial court and, absent an abuse of discretion that is materially prejudicial to a party, a trial court's decision will stand Kirschbaum v. Dillon (1991),58 Ohio St.3d 58, 66. An abuse of discretion, however, connotes more than an error of law or judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Tracyv. Merrell Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147,152.
 {¶ 24} In allowing photographs of the victim's cervix into evidence, the trial court found that the photographs were "part of the entire activity, even though it's not subject of this particular proceedings." (Tr. 282.) Later, the trial court also observed that "[j]ust for purposes of the record, don't forget the kidnapping charge requires a finding of sexual activity. And the jury could find that there was sexual vaginal activity for purposes of supporting the kidnapping claim. So that's another reason why the photographs, the issue with respect to vaginal part may qualify also." (Tr. 295.)
 {¶ 25} Even assuming arguendo it was an error of law to admit the photographs of the victim's reddened cervix into evidence, we cannot find that the trial court's attitude was unreasonable, arbitrary, or unconscionable. On recross-examination, the sexual assault nurse examiner testified that her understanding that the redness of the victim's cervix was related to trauma was based upon the account the victim provided to the nurse examiner during the sexual assault examination. (Tr. 250.) However, earlier on direct examination, the sexual assault nurse examiner testified that, although it was "not likely" that the redness was related to consensual sexual intercourse, it was "possible" that the redness could have occurred during consensual sexual intercourse. (Tr. 235; see, also, Tr. 237, 248.) Furthermore, on cross-examination, the sexual assault nurse examiner testified that the redness could have been due to "irritation," "infection," or "trauma," (Tr. 236), and she conceded that, even though at the time of her examination of the victim there were no signs of infection, she "[could not] be certain" whether the victim had an infection. (Tr. 236-237; see, also, Tr. 251.)
 {¶ 26} Thus, through her testimony, the sexual assault nurse examiner provided alternative causes for the reddened cervix and did not definitively establish that the basis for the redness of the victim's cervix was trauma that was caused by penile-vaginal penetration.
 {¶ 27} Accordingly, based upon the sexual assault nurse examiner's testimony that asserted no definitive basis for the reddened cervix, we cannot conclude that, under these circumstances, the trial court abused its discretion by admitting into evidence the photographs of the victim's cervix.
 {¶ 28} Defendant also asserts the trial court erred by allowing into evidence testimony concerning defendant's alleged burglary of a neighbor's house. At trial, the victim's boyfriend, on direct examination, testified that "[e]arlier that night [defendant] busts somebody's window went into somebody else's house, a neighbor's." (Tr. 154.) Following this testimony, defendant immediately objected and the trial court sustained defendant's objection. Id.
 {¶ 29} In its preliminary instructions to the jury, the trial court instructed:
If I decide the question is improper, I will sustain the objection to that question. * * *
* * *
Now, in the event that you hear the answer to the question and I've sustained an objection to the question, I'm going to ask you to disregard the question and the answer that you've already heard. Don't consider either for any purpose whatsoever. It is a difficult concept to forget something that you've heard, especially if you want to consider it. * * * If you have heard the answer, disregard the answer.
(Tr. 84.)
 {¶ 30} We find no evidence that the jury failed to follow the trial court's instructions. See State v. Jones (2001),91 Ohio St.3d 335, 344, certiorari denied, 534 U.S. 1004, 122 S.Ct. 483, citing State v. Raglin (1998), 83 Ohio St.3d 253, 264, certiorari denied (1999), 525 U.S. 1180, 119 S.Ct. 1118
(observing that a jury is presumed to follow a court's instructions).
 {¶ 31} Accordingly, absent any evidence to rebut the presumption that the jury followed the trial court's instructions, we find no error.
 {¶ 32} Defendant also asserts the trial court erred by allowing evidence related to defendant's alleged threats and attack of Austin Wilson.
 {¶ 33} Here, defendant failed to object to Wilson's testimony that defendant grabbed Wilson by the throat and threatened to kill him. Absent objection, defendant waived this issue for purposes of appeal, and we review the asserted error under a plain error standard. See Moss, supra. "To prove plain error, defendant must show that, absent the alleged error, the result of the trial clearly would have been different." Id. citing Long,
supra.
 {¶ 34} Based upon our review of the evidence, which includes the victim's account of the cunnilingus rape and kidnapping, we cannot find that, absent the alleged error about Wilson's testimony, the result of the trial clearly would have been different. Therefore, we cannot conclude the trial court committed plain error.
 {¶ 35} Accordingly, based upon the foregoing, we overrule defendant's first assignment of error.
 {¶ 36} Defendant's second and third assignments of error assert defendant's conviction was supported by insufficient evidence and was against the manifest weight of the evidence. Defendant contends the victim's testimony was inconsistent and unreliable and the testimony of other witnesses was not credible. Because these assignments of error are interrelated, we jointly address them.
 {¶ 37} When considering a challenge to the sufficiency of the evidence, an appellate court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v.Smith (1997), 80 Ohio St.3d 89; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 38} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether the factfinder's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v.Thompkins (1997), 78 Ohio St.3d 380, 387; Conley, supra. "The question for the reviewing court is `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" State v. Group, 98 Ohio St.3d 248,2002-Ohio-7247, at ¶ 77, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Thompkins, at 387, quotingTibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211
("[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony").
 {¶ 39} R.C. 2905.01 denominates the crime of kidnapping. According to R.C. 2905.01(A):
No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
(4) To engage in sexual activity, as defined in section 2907.01
of the Revised Code, with the victim against the victim's will[.]
See, also, former R.C. 2907.01(C) (defining "sexual activity" as "sexual conduct or sexual contact, or both"); former R.C.2907.01(A) (defining "sexual conduct" as "cunnilingus between persons regardless of sex").
 {¶ 40} Former R.C. 2907.02 denominated the crime of rape. According to former R.C. 2907.02(A)(2), "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Former R.C. 2907.02(C) provided that "[a] victim need not prove physical resistance to the offender in prosecutions under this section." See, also, former R.C. 2907.02(B) (providing that violation of former R.C. 2907.02 constituted rape, a felony of the first degree).
 {¶ 41} At trial, the victim testified that defendant "dragged me" and "grabbed my arm, then grabbing my neck, then took me on the porch." (Tr. 106.) The victim further testified that defendant told her that "I'm going to kill you," (Tr. 107), and defendant "took off the left side of my pants and socks off" and "he put his tongue in my vagina area," (Tr. 108), and the victim did not want defendant to put his tongue in her vaginal area. (Tr. 108-109.)
 {¶ 42} Construing this evidence in favor of the prosecution, we conclude this evidence, if believed by the trier of fact, permits any rational trier of fact to find the essential elements of the offenses of kidnapping and cunnilingus rape beyond a reasonable doubt. Therefore, defendant's contention that his convictions were supported by insufficient evidence is not persuasive.
 {¶ 43} Recently, in State v. Pryor, Franklin App. No. 03AP-1041, 2004-Ohio-4558, at ¶ 20, this court stated:
While our review of the manifest weight of the evidence involves a limited weighing of the evidence, inconsistencies in the testimony generally do not render the verdict against the manifest weight of the evidence. State v. Thompson (1998),127 Ohio App.3d 511, discretionary appeal not allowed,83 Ohio St.3d 1451 (stating that "[a] reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder"); State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 (noting that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence"). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citingState v. Caldwell (1992), 79 Ohio App.3d 667. * * *
See, also, State v. Collins (Apr. 10, 2001), Franklin App. No. 00AP-650, dismissed, appeal not allowed, 93 Ohio St.3d 1410, citing In re Fisher (June 25, 1998), Franklin App. No. 97APF10-1356 (observing that "[c]redibility determinations on conflicting testimony are issues primarily reserved to the trier of fact to be second-guessed only in the most exceptional case").
 {¶ 44} Applying those principles here, we do not find that the inconsistencies rise to the level wherein the evidence weighs heavily against conviction. See Group, supra, at ¶ 77, citingMartin, supra, at 175.
 {¶ 45} Furthermore, we find unpersuasive defendant's contention that it is incredible that, after raping the victim, defendant would call the police shortly thereafter to report that his vehicle was stolen and then voluntarily go to the police station to discuss his stolen vehicle complaint. See, e.g.,Schaefer v. Cincinnati Street Ry. Co. (1945), 75 Ohio App. 288,292 (observing that an appellate court is not required to believe the incredible). In Schaefer, the plaintiff collided with a trolley bus that was owned and operated by the defendant. TheSchaefer court found:
* * * The plaintiff's testimony that she saw defendant's bus 400 feet away, when she was 40 feet away from the point of collision and that she traveled at the rate of from 10 to 20 miles per hour to the point of collision, would require the bus to travel at an incredible speed to reach the point of collision at the same time as the plaintiff. At plaintiff's highest estimate of her own speed, it would have required the bus to travel at almost 100 miles per hour to have collided with her car, and at her lowest estimate it would have required it to travel at twice that speed. That is incredible. We are not required to believe it.
Id. at 291-292.
 {¶ 46} Here, although defendant's conduct subsequent to the rape may be unusual, it is not so unlikely to be incredible. See, e.g., State v. Mattison (1985), 23 Ohio App.3d 10, 15
(distinguishing Schaefer).
 {¶ 47} Therefore, we do not find that, based upon the evidence, the jury clearly lost its way and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. See Group, supra, at ¶ 77, citingMartin, supra, at 175. Consequently, defendant's contention that his convictions were against the manifest weight of the evidence is not persuasive.
 {¶ 48} Accordingly, we overrule defendant's second and third assignments of error.
 {¶ 49} In his fourth assignment of error, defendant asserts he was denied effective assistance of counsel. Defendant asserts his trial counsel was ineffective because: (1) trial counsel failed to object to the jury instruction concerning "other acts"; (2) trial counsel failed to object to alleged hearsay testimony by Austin Wilson; (3) trial counsel should have proposed a jury instruction that noted defendant's silence should not be held against defendant; (4) trial counsel should have objected to the admission of evidence of defendant's assault of and threats against Austin Wilson; and (5) trial counsel should have objected to prosecutor's motion in limine concerning the prosecutor's requested prohibition against referencing defendant's acquittal concerning the charge of vaginal rape.
 {¶ 50} In State v. Morales, Franklin App. No. 03AP-318, 2004-Ohio-3391, at ¶ 24, this court stated:
To demonstrate ineffective assistance of counsel, defendant first must show that counsel's performance was deficient, which requires showing that counsel made errors so serious counsel was not functioning as the "counsel" guaranteed the defendant by theSixth Amendment. Strickland v. Washington (1984), 466 U.S. 668,686, 104 S.Ct. 2052. Second, defendant must demonstrate that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Id. Unless defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id.
 {¶ 51} Here, the trial court instructed the jury that it was "not to consider any other offense other than the two offenses remaining for you to consider; and that being a charge of kidnapping related to the sexual activity of cunnilingus that has alleged and there is a charge of rape dealing with the cunnilingus. You are to consider all of the evidence as they relate to these charges and these charges only." (Tr. 337.) The trial court further instructed the jury that it was "to consider only the evidence dealing were [sic] these charges and don't consider any other charges that you may have heard evidence with respect to" (Tr. 340), and "in deciding this case, you are not to be influenced by any sympathy or prejudice." Id.
 {¶ 52} Defendant contends, however, that trial counsel was ineffective because he failed to propose an instruction that directed the jury to not consider evidence of "other acts." Even assuming arguendo that defendant's trial counsel was ineffective for failing to propose an instruction concerning "other acts" evidence, we cannot find that defendant's trial counsel's error was so serious as to render unreliable the trial's result, thereby depriving defendant of a fair trial.
 {¶ 53} Defendant further contends that his trial counsel was ineffective because he failed to object to alleged hearsay testimony by Austin Wilson.
 {¶ 54} At trial, on direct examination, Wilson testified as follows:
Q. [By prosecutor] Did [the victim] say anything to you when she woke you up?
A. She told me what happened.
Q. She told you what happened?
A. Uh-huh.
Q. What did she say happened?
A. Said that —
THE COURT: Let's not answer that question.
A. She said that the bald-headed —
THE COURT: Don't answer that question. Let's object. All right.
(Tr. 167.)
 {¶ 55} Even assuming arguendo that defendant's trial counsel was ineffective for failing to object to Wilson's testimony, because the court ordered Wilson not to answer the prosecutor's question, we cannot find that defendant's trial counsel's error was so serious as to render unreliable the trial's result, thereby depriving defendant of a fair trial.
 {¶ 56} Defendant also contends his trial counsel was ineffective because he should have moved the trial court to instruct the jury that defendant's post-Miranda decision to end the interview should not be construed against him.[4]
 {¶ 57} On recross-examination by defense counsel, Detective Jan Roberts testified:
Q. [By defense counsel] So you talked to my client for ten minutes. And basically, all you were doing, you were assuming that he understood what you talked about.
A. In the first part of the interview I was explaining what case we were investigating. I was getting basic information. I explained his rights to make sure he understood his rights. And then I started questioning him. Your client ended the interview. I did not end it.
(Tr. 275.)
 {¶ 58} Even assuming arguendo that defendant's trial counsel was ineffective for failing to move the court for a jury instruction that defendant's post-Miranda decision to end the interview should not be construed against him, we cannot find that, under the totality of the circumstances, his error was so serious as to render unreliable the trial's result, thereby depriving defendant of a fair trial. See, e.g., Strickland v.Washington (1984), 466 U.S. 668, 695, 104 S.Ct. 2052 (stating that in a death sentence case "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury").
 {¶ 59} Defendant further contends that his trial counsel was ineffective because he should have objected to the admission of evidence of defendant's assault of and threats against Wilson. Defendant contends this evidence was not probative and showed that defendant acted in conformity to a propensity for violence.
 {¶ 60} "It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial is inadmissible. * * * Evidence of other acts is not admissible simply because such proof demonstrates a trait, disposition, or propensity toward the commission of a certain type of crime."State v. Wilkinson (1980), 64 Ohio St.2d 308, 314. See, also,State v. Thompson (1981), 66 Ohio St.2d 496, 497. However, R.C.2945.59 provides exceptions to this general rule. Thompson, at 497. R.C. 2945.59 states, as follows:
In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
 {¶ 61} In Thompson, the Supreme Court of Ohio explained:
"Other acts" testimony is relevant and, thus, admissible, under the "scheme, plan or system" exception of R.C. 2945.59 where those acts form part of the immediate background of the crime charged, and hence are "inextricably related" to the act alleged in the indictment; that is, where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime. * * * "`The jury is entitled to know the "setting" of a case.'"
Id. at 498.
 {¶ 62} In State v. Mardis (1999), 134 Ohio App.3d 6, 21-22, this court observed:
* * * Post-Wilkinson cases clarify the issue * * *. In Statev. Smith (1990), 49 Ohio St.3d 137, 551 N.E.2d 190, the Supreme Court of Ohio applied Wilkinson as follows:
"This court has examined admissibility of `other acts' evidence in a number of decisions. We have stated the general rule to be `that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which adefendant is on trial, is inadmissible.' State v. Wilkinson
(1980), 64 Ohio St.2d 308, 18 O.O.3d 482, 415 N.E.2d 261.
"Exceptions to this general rule have been limited by R.C.2945.59 and Evid.R. 404(B) to instances where the probativevalue of the evidence is sufficient to allow its admission." (Emphasis added.) Id. at 139, 551 N.E.2d at 192.
 {¶ 63} Here, it is debatable whether defendant's contact with Wilson was part of the "setting of the case" and whether its probative value was sufficient to allow its admission. However, even assuming arguendo that defendant's trial counsel did not function as the "counsel" guaranteed by the Sixth Amendment by failing to object to Wilson's testimony, we cannot find that defendant's trial counsel's alleged error was so serious as to render unreliable the trial's result, thereby depriving defendant of a fair trial.
 {¶ 64} Additionally, defendant contends his trial counsel was ineffective because he should have objected to the prosecutor's motion in limine that requested a prohibition against referencing defendant's acquittal concerning the vaginal rape charge. (Tr. 3.)
 {¶ 65} "Generally, a judgment of acquittal is not admissible for two reasons: (1) because it is hearsay * * * and (2) because it is not relevant since it is not a finding of fact, but merely an `"acknowledgement that the government failed to prove an essential element of the offense beyond a reasonable doubt."'"State v. Wilson (June 15, 1999), Franklin App. No. 98AP-965.
 {¶ 66} Here, even assuming arguendo that defendant's trial counsel erred by failing to object to the prosecution's motion in limine, we cannot find that under the totality of the circumstances his error was so serious as to render unreliable the trial's result, thereby depriving defendant of a fair trial.
 {¶ 67} In summary, even assuming arguendo that defendant's trial counsel's performance was deficient, we cannot conclude that defendant's trial counsel's performance prejudiced the defense.
 {¶ 68} Accordingly, defendant's fourth assignment of error is overruled.
 {¶ 69} Defendant's fifth assignment of error asserts defendant was denied a fair trial due to prosecutorial misconduct.
 {¶ 70} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. * * * The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Lynch, 98 Ohio St.3d 514,2003-Ohio-2284, at ¶ 145, certiorari denied, ___ U.S. ___,124 S.Ct. 405. See, also, State v. Maurer (1984),15 Ohio St.3d 239, 267, certiorari denied (1985), 472 U.S. 1012,105 S.Ct. 2714, rehearing denied (1985), 473 U.S. 924, 106 S.Ct. 15, quoting Dunlop v. United States (1897), 165 U.S. 486, 498,17 S.Ct. 375 (observing that "`[i]f every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation'").
 {¶ 71} In State v. Poole (1996), 116 Ohio App.3d 513, 524, dismissed, appeal not allowed (1997), 68 Ohio St.3d 1453, the Seventh District Court of Appeals observed:
* * * The effect of the alleged misconduct must be judged in the context of the entire trial. * * * One factor relevant to the due process analysis is whether the alleged misconduct was an isolated incident in an otherwise properly tried case. * * * In order to excuse a prosecutor's improper remarks, it must be clear beyond a reasonable doubt that, absent the remarks, the jury would have found the defendant guilty. * * *
 {¶ 72} Defendant contends the following comments by the prosecutor during closing arguments were improper: (1) "It may be very sad that [Austin Wilson] wasn't thinking about what [the victim] said. But he was honest with you" (Tr. 323); (2) "Michael Perry is guilty of rape because [the victim] hasn't lied to you" (Tr. 326); (3) "[The victim] was raped" (Tr. 286); (4) "Defense wants you to believe that the victim lied. If she was lying, why didn't she make it worse? Why didn't she tell you she screamed, she ran away? Because she didn't. She's telling you what happened to her[.]" (Tr. 321.)
 {¶ 73} At trial, defendant failed to object to the alleged improper comments. Therefore, defendant waived all but plain error. See, e.g., State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190, at ¶ 120; State v. Murphy (2001),91 Ohio St.3d 516, 535, certiorari denied (2002),534 U.S. 1116, 122 S.Ct. 926. "To prove plain error, defendant must show that, absent the alleged error, the result of the trial clearly would have been different." Moss, supra, citing Long, supra.
 {¶ 74} After reviewing the prosecutor's comments within the context of the entire trial, we cannot find that, absent the alleged error, the result of the trial clearly would have been different. Consequently, we conclude the prosecutor's comments did not rise to the level of plain error.
 {¶ 75} Therefore, defendant's fifth assignment of error is overruled.
 {¶ 76} Accordingly, having found the trial court's failure to maintain written jury instructions with the "papers of the case" is not plain error under Crim.R. 52(B), and having overruled defendant's five remaining assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Lazarus, P.J., and Brown, J., concur.
[1] In its judgment entry that was filed May 10, 2001, for reasons that are not apparent from the record, the trial court stated that "[t]he jury found the Defendant not guilty of Count Three of the Indictment [gross sexual imposition]." See, also,Perry, 101 Ohio St.3d 118, 2004-Ohio-297, at ¶ 2 (wherein the Supreme Court also noted that the jury acquitted defendant of gross sexual imposition).
[2] Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
[3] Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
[4] See, generally, Miranda v. Arizona (1966), 384 U.S. 436,468, 86 S.Ct. 1602, at fn. 37 (stating that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation").